385 A.2d 1367

**COMMONWEALTH of Pennsylvania**

v.

**Arthur Lee BYCER, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1976.

Decided April 28, 1978.

G. Guy Smith, Media, for appellant.

D. Michael Emuryan, Assistant District Attorney, Media, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Appellant Arthur Lee Bycer was indicted on two counts of involuntary manslaughter as the result of a motor vehicle accident in which two pedestrians were killed. The instant

appeal is taken from an order of the lower court denying appellant's motion for discharge. We affirm the lower court's order.

Trial in the instant case commenced on January 26, 1976. During the Commonwealth's presentation of evidence, the assistant district attorney attempted to introduce a photograph of one of the deceased. He also informed the court that he intended to offer a similar photograph of the other victim. The lower court sustained appellant's objection to the introduction of the photographs on the ground that they were prejudicial.

After three witnesses had testified, the court declared a recess. During the recess several women, who were apparently relatives of the victims, were observed by the assistant district attorney and defense counsel holding the pictures in such a manner as to make them potentially visible to the members of the jury who were leaving the courtroom.

When court reconvened, appellant's counsel objected and requested a mistrial. The request was initially refused and the courtroom was cleared. The members of the jury were then questioned concerning their knowledge and observation of the incident. Two of the jurors indicated that as they were leaving the courtroom, they had seen several individuals holding pictures. None of the jurors, however, had observed the contents of the pictures.

At this point, the court recessed for lunch and conducted an in-chambers interview with appellant, appellant's attorney and the assistant district attorney. The trial judge explained that appellant's case may have been prejudiced because of the incident. Appellant was informed that he would be retried if the mistrial was granted. He was also told that he could withdraw his motion, request cautionary instructions and proceed to verdict with the first jury. After appellant conferred with his attorney, he asked the court to proceed with cautionary instructions. Appellant was advised that if he pursued this course he would waive any right to claim on appeal that his case was prejudiced as a result of the incident.

The assistant district attorney opposed the withdrawal of the motion for mistrial stating that:

"The Commonwealth feels now with the clearing of the courtroom, the polling of the Jury, the lengthy session in Chambers this afternoon, as well as anticipated cautionary instructions, it could very well prejudice the Commonwealth to have the Jury proceed with the evidence presented, and we also feel and would submit that although it appears on record that Mr. Bycer would knowingly and intelligently withdraw that Motion . . . that regarding the possibility of later developments it could prove to be an unwise decision on Mr. Bycer's part. . . ." (NT 24).[1]

The trial court informed the assistant district attorney that "Rule 1118, Criminal Procedure, states that only the Defendant may move for a mistrial," (NT 24) and thus rejected the argument that a mistrial should be granted simply because the Commonwealth's case may have been prejudiced. (*See also* NT 26).

The judge then informed the parties that he intended to declare a mistrial sua sponte, stating that:

"As I indicated to you gentlemen, I think that the prejudice has permeated this entire Jury because of the necessity for questioning the entire Jury and the fact that two of them did see and hear something; and I foresee future problems if he is convicted, as his own lawyer has stated.

Therefore, under the circumstances, the Court feels and holds that there is a manifest necessity to declare a mistrial. The prejudice has permeated the entire Jury by now as we have indicated. Very well." (NT 25).

The lower court then ordered a mistrial and discharged the jury.

Appellant subsequently filed a petition for a writ of habeas corpus alleging that his retrial, which was scheduled

1. The Notes of Testimony referred to in this opinion are from a hearing held March 24, 1976, on appellant's petition for a writ of habeas corpus.

for March 22, 1976, was precluded on double jeopardy grounds. The petition was denied after a hearing. This appeal was certified to, and accepted by, this court as a discretionary appeal pursuant to section 501(b) of the Appellate Court Jurisdiction Act of 1970.[2]

Pa.R.Crim.P. 1118(b) provides, in part, that "the trial judge may declare a mistrial only for reasons of manifest necessity." This Rule simply reiterates a requirement that has long been recognized by the United States Supreme Court, designed to prevent the state from making repeated attempts to convict an individual on an alleged offense. *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).

Rather than adopting any clear cut rules establishing what constitutes manifest necessity, our courts have preferred to judge each case on its own facts in light of the following language from *United States v. Perez, supra.*

"We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discre-

2. Act of July 31, 1970, P.L. 673, No. 223, § 501(b) [17 P.S. § 211.501(b) (Supp.1977–78)]. *See also Commonwealth v. Haefner,* 473 Pa. 154, 373 A.2d 1094 (1977); *Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977) (denial of motion to quash on double jeopardy grounds constitutes an appealable order).

tion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office." 22 U.S. at 580.

Under *Perez*, a trial court has the authority to declare a mistrial without constitutional implications if the trial court considers all the circumstances and in its sound discretion determines that there is a manifest necessity for the act. *Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616 (1974) (lead opinion by [former] Chief Justice Jones). It is beyond dispute that in the instant case, the lower court conducted an extensive inquiry into the matter with both the jury and the parties.

It may be true that if the mistrial had not been granted, appellant could not have asserted with success that he was entitled to a new trial on the basis of the incident. Such a conclusion, however, would not compel a finding for appellant in this case. "[T]he fact that in refraining from declaring a mistrial the court would have committed no error does not necessarily give rise to the converse proposition that in taking affirmative action the trial court erred." *Commonwealth v. Stewart, supra,* 456 Pa. at 453, 317 A.2d at 619. Moreover, as Mr. Justice Nix noted in *Stewart,* "[d]efense counsel may have been incompetent or he may have been aware of another unrelated set of circumstances so favorable to the defense that he was willing to continue in the face of this prejudice. To prohibit the trial judge from acting to abort the trial, in such a circumstance, would make the proceeding a contest between countervailing prejudices rather than a resolution of truth based on relevant evidence." 456 Pa. at 459, 317 A.2d at 622 (concurring opinion).

Appellant argues that there was no showing that the jury was prejudiced by the trial incident. *Commonwealth v. Stewart, supra,* however, establishes that prejudice is not essential to a judge's finding of manifest necessity. *See also Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961). There are cases which intimate that prejudice is necessary *See, e. g., Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727 (1972). These cases are distinguishable in that before granting the mistrial the lower court failed to con-

duct a full inquiry on the matter and therefore failed to consider all the circumstances.

Under all the circumstances presented in this case, we are unable to conclude that the trial court abused its discretion in ordering a mistrial on the grounds of manifest necessity.

The judgment of sentence is affirmed.

CERCONE, J., concurs in the result.

HOFFMAN, J., files a dissenting opinion in which SPAETH, J., joins.

WATKINS, former President Judge, did not participate in the consideration or decision in this case.

HOFFMAN, Judge, dissenting:

Appellant contends that the Double Jeopardy Clause of the United States Constitution[1] and Rule 1118(b) of the Pennsylvania Rules of Criminal Procedure[2] bar his retrial for involuntary manslaughter. I agree and would, therefore, reverse the order of the lower court denying appellant's habeas corpus petition and order that appellant be discharged.

On September 12, 1975, Delaware County officials filed a criminal complaint charging appellant with two counts of involuntary manslaughter; the charges stemmed from an August 1, 1975 automobile accident in Haverford Township in which two persons died. On January 26, 1976, trial commenced before a jury in the Delaware County Court of

1. The Fifth Amendment to the United States Constitution provides, in pertinent part: ". . . [N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb; . . ." The guarantees of this clause are incorporated by the Due Process Clause of the Fourteenth Amendment and are, therefore, available to a defendant in a state criminal proceeding. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

2. Rule 1118(b), Pa.R.Crim.P., 19 P.S. Appendix, provides: "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity."

Common Pleas. The Commonwealth called as a witness the father of one of the decedents and offered to introduce a photograph of his deceased son into evidence. The Assistant District Attorney also advised the court that the Commonwealth intended to offer a similar photograph of the other deceased victim. Appellant's counsel objected, and the trial court ruled the photographs inadmissible because they would be prejudicial.

After the Commonwealth had presented three witnesses, the trial court declared a short recess. During this recess, appellant's counsel and the Assistant District Attorney observed some women holding up the inadmissible pictures of the deceased victims in such a manner as to be visible to the members of the jury leaving the courtroom. When court reconvened at 12:15 p. m., appellant's counsel moved for a mistrial. The trial court cleared the courtroom and questioned the members of the jury as to what they had observed. Two jurors stated that they saw some people holding up pictures. However, none of the jurors saw the content of the pictures and none could identify the persons who had displayed the pictures. The trial court instructed the jury not to let this incident affect its deliberations in any way and then declared a recess for lunch. After lunch, at about 2:15 p. m., the trial judge interviewed appellant, appellant's counsel, and the prosecutor in his chambers. The trial court informed appellant that if his attorney's motion for a mistrial were granted, he could be tried again. Alternatively, appellant could withdraw the motion for a mistrial and request a cautionary instruction. However, if appellant chose to pursue the latter course, he would waive his right to appeal on the grounds of any prejudice generated by this incident. Appellant and his counsel then conferred privately for a few minutes and canvassed the possible alternatives. After this discussion, appellant's counsel informed the court that his client wished to withdraw his motion for a mistrial and the following interchange occurred:

"[Appellant's counsel]: . . . [W]hat is your opinion as to whether or not you think the Jury is prejudiced or

whether or not you wish to continue with the Motion for mistrial, or whether you wish to withdraw the Motion for mistrial and proceed with a cautionary instruction?

"[Appellant]: I would prefer it to proceed with the cautionary instructions.

"[Counsel]: [D]o you understand that by doing that you are realistically and effectively limiting certain rights that you might have on appeal, in particular if you are found guilty and convicted by the Jury, if we take an appeal we will not in that appeal be able to claim any prejudice as a result of anything those jurors may or may not have seen or anything they may have thought in their minds as a result of what they saw or thought they saw, because we have discussed this thoroughly and we have gone over it at this point, and you and I have discussed it, and you want the Motion withdrawn in order to proceed with the trial with this Jury.

"[Appellant]: [Y]es, I do understand this.

"[Counsel]: [A]nd understanding that, that is still your wish?

"[Appellant]: [Y]es, this is what I would like to do." The trial court also asked appellant whether he had fully contemplated the alternatives and still desired to withdraw the motion for a mistrial; appellant responded affirmatively. The trial court then stated that the case would proceed. At this point, the Commonwealth asked the trial court to deny appellant's request to withdraw his motion; the prosecutor stated that the "clearing of the courtroom, the polling of the Jury, the lengthy session in Chambers this afternoon, as well as anticipated cautionary instructions . . . could very well prejudice the Commonwealth." Moreover, the Commonwealth felt that appellant's decision could prove to be unwise in the event of unspecified later developments. At about 2:30 p. m., the trial court declared a mistrial *sua sponte* and stated:

"As I indicated to you gentlemen, I think that the prejudice has permeated this entire Jury because of the necessity

for questioning the entire Jury and the fact that two of them did see and hear something; and I foresee future problems if he is convicted, as his own lawyer has stated.

"Therefore, under the circumstances, the Court feels and holds that there is a manifest necessity to declare a mistrial. The prejudice has permeated the entire Jury by now as we have indicated. Very well."

The Commonwealth scheduled a new trial for March 22, 1976. On March 17, 1976, appellant filed a petition for a writ of habeas corpus in the Delaware County Court of Common Pleas; the petition alleged that a retrial would constitute double jeopardy. The lower court denied this petition and this appeal followed.[3]

Appellant contends that he cannot be retried consistently with the federal constitution's guarantees against double jeopardy. "The Fifth Amendment's prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for the defendant's benefit in .   . criminal proceedings. A power in government to subject the individual to repeated prosecutions for the same offense would cut deeply into the framework of procedural protections which the Constitution establishes for the conduct of a criminal trial." *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (plurality opinion); *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972). Multiple prosecutions subject a defendant to "embarrassment, expense and ordeal and [compel] him to live in a continuing state of anxiety and insecurity, as well [and enhance] the possibility that even though innocent he may

3. The lower court certified in its order that the petition involved a controlling question of law as to which there was a substantial ground for difference of opinion and the resolution of which would materially advance the termination of the litigation. On August 9, 1976, we agreed to take this appeal. See Act of July 31, 1970, P.L. 673, No. 223, art. V, § 501, 17 P.S. § 211.501. Parenthetically, I note that our Supreme Court has reviewed a denial of a writ of habeas corpus alleging that a retrial would constitute double jeopardy without explaining the basis of its jurisdiction. See *Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616 (1974), cert. denied, 417 U.S. 949, 94 S.Ct. 3078, 41 L.Ed.2d 670 affirmed, *sub nom.*, *United States ex rel. Stewart v. Hewitt*, 517 F.2d 993 (3rd Cir. 1975).

be found guilty." *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). *See also United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States ex rel. Russo v. Superior Court of New Jersey*, 483 F.2d 7 (3rd Cir. 1973) cert. denied 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315. When a mistrial is declared, a defendant's "valued right to have his trial completed by a particular tribunal" may be unduly compromised. *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *United States v. Dinitz*, supra.

In *United States v. Perez*, 22 U.S. 579, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824), Mr. Justice STORY articulated the standard for determining whether a retrial, following a declaration of a mistrial over a defendant's objection, constitutes double jeopardy:

"We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious cases; and in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges under their oaths of office." The United States and Pennsylvania Supreme Courts have consistently adhered to this formulation and have abjured the application of any mechanical formulae for detecting violations of the Double Jeopardy Clause. See *United States v. Dinitz*, supra; *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Downum v.*

*United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Commonwealth v. Bartolomucci,* 468 Pa. 338, 362 A.2d 234 (1976); *Commonwealth ex rel. Walton v. Aytch,* 466 Pa. 172, 352 A.2d 4 (1976). However, in *Illinois v. Somerville,* supra at 464, 93 S.Ct. 1066, 1070, the United States Supreme Court suggested that a general approach, premised on the policy of protecting the ends of public justice[4] enunciated in *United States v. Perez,* could be distilled from its cases on double jeopardy. "A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial." The United States and Pennsylvania Supreme Courts have also cautioned trial courts "always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn,* supra, 400 U.S. at 486, 91 S.Ct. 547, 558; *Commonwealth ex rel. Walton v. Aytch,* supra; *Commonwealth v. Shaffer,* supra. Any doubts as to the propriety of declaring a mistrial over the objection of a defendant must be resolved in favor of the liberty of the citizen. *Downum v. United States,* supra; *Commonwealth v. Bartolomucci,* supra; *Commonwealth ex rel. Walton v. Aytch,* supra. *See also United States ex rel. Russo v. Superior Court of New Jersey,* supra.

In considering the guidelines suggested by *Illinois v. Somerville,* supra, I note first that if appellant's first trial had proceeded to completion and resulted in a verdict of guilty, appellant could not have attacked his conviction on the

---

**4.** When a case involves the injection or discovery of a possibly prejudicial element, a court should inquire whether "the ends of public justice" or, more precisely, "the public's interest in fair trials designed to end in just judgments", *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 justifies the declaration of a mistrial. See *Commonwealth v. Bartolomucci,* supra. *See also Illinois v. Somerville,* supra; *Commonwealth v. Robson,* 461 Pa. 615, 337 A.2d 573 (1975); *Commonwealth v. Stewart,* supra.

grounds of possible prejudice stemming from the exposition of the photographs. Appellant, after consultation with his counsel and the trial court, made very clear his preference for completing the trial and his decision to waive any right to appeal on the grounds of possible prejudice caused by this incident. Appellant's waiver would have been binding. *Commonwealth v. Stewart*, supra. Cf. *Commonwealth v. Agie*, 449 Pa. 187, 296 A.2d 741 (1972). Accordingly, the trial court erroneously considered the possibility of future problems on appeal arising from a failure to declare a mistrial; a verdict of guilty "would have to be reversed on appeal due to an obvious procedural error in the trial." *Illinois v. Somerville*, supra, 410 U.S. at 464, 93 S.Ct. at 1070.[5]

*Illinois v. Somerville*, supra, also intimates that a trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached. See also *Thompson v. United States*, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894); *Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891). In *Commonwealth v. Stewart*, supra, our Supreme Court reviewed a trial court's decision to abort trial because an impartial verdict could not be reached. The defendant in *Stewart* was accused of murder. After trial commenced, the trial court learned that the victim's father was employed as a tipstaff attending the jurors. The trial court ascertained that the defendant, after consultation with his attorney, desired to continue with the trial; defendant waived any right to appeal on the issue of prejudice stemming from the connection between the tipstaff and the jury. Nevertheless, the trial court declared a mistrial *sua sponte*. Defendant then filed a petition for a writ of habeas corpus

---

**5.** The facts of *Illinois v. Somerville*, supra, afford the Commonwealth little comfort. In that case, the trial court declared a mistrial *sua sponte* when it learned that a defect in an indictment made a valid conviction impossible. The defect was jurisdictional under Illinois law and could not be waived. The Supreme Court held that the "ends of public justice" would not be served by allowing a trial to continue when reversal on appeal would be *a certainty*. See also *Commonwealth v. Stewart*, supra. (Dissenting opinion by Justice ROBERTS).

alleging that a retrial would constitute double jeopardy; the lower court denied this petition.

On appeal, the Supreme Court affirmed the denial of the writ of habeas corpus, but a majority of the court could not agree on an opinion in support of its decision. Chief Justice JONES, in an opinion joined by Justices EAGEN and POMEROY, invested the trial court with a broad range of discretion to declare a mistrial when prejudice might bias a jury's deliberations. See *Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).[6] Justice NIX, in an opinion joined by Justice POMEROY, focused on the highly prejudicial nature of the tipstaff's relationship with the jury: "In my view the exposure of the jury to the deceased's father was so pregnant with the possibility of improper influence, that the trial judge properly declared a mistrial . . . The very nature of the crime involved and the position held by the deceased's father created an air of impropriety so great as to demand a mistrial." 456 Pa. at 458, 317 A.2d at 621. Justice O'BRIEN, also wrote a concur-

---

**6.** In *Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), the Supreme Court, 5–4, stated that a trial judge had particularly broad discretion to declare a mistrial when he acted in the sole interest of the defendant. However, in *United States v. Jorn*, supra at 400 U.S. 483, 91 S.Ct. 547, 556, Mr. Justice HARLAN, speaking for three other members of the Court, stated that the approach employed in *Gori* subverted the policies underpinning the double jeopardy provision. "Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action." (Mr. Justices BLACK and BRENNAN, dissenters in *Gori*, did not join Mr. Justice HARLAN's plurality opinion because they believed the Supreme Court lacked jurisdiction.") See also *Downum v. United States*, supra; *United States ex rel. Russo v. Superior Court of New Jersey*, supra; *United States v. Walden*, 448 F.2d 925 (4th Cir. 1971); *United States v. Burdick*, 284 F.Supp. 685 (E.D.Pa.1968); *Commonwealth v. Shaffer*, supra. I agree with the plurality opinion in *United States v. Jorn*, supra, that *Gori's* analysis eviscerates the policies behind the Double Jeopardy Clause. Moreover, I believe the instant case is factually distinguishable from *Gori* because in *Gori* the defendant did not waive his objection to the prejudicial incident, he did not object to the declaration of the mistrial, and the lower court did not question the jurors and discover that the extent of the prejudice was minimal. See *Commonwealth v. Shaffer*, supra. See also infra.

ring opinion in which he underlined the special circumstances involved in the case: the appearance of justice would be sullied if a court were to allow the father of a homicide victim to serve as a court officer with access to the jury. Finally, Justice ROBERTS, speaking for Justice MANDERINO, dissented and argued, in part, that the trial court impermissibly speculated as to the possibility of prejudice and did not exhaust all reasonable alternatives to ferret out and eliminate any prejudice. Moreover, the trial court improperly imposed its fears about possible prejudice upon a counselled defendant willing to waive any objections to the role of the victim's father as tipstaff.

Because the votes of Justices NIX and O'BRIEN were necessary in order to obtain a majority in *Commonwealth v. Stewart,* I believe that *Stewart* turns on the highly prejudicial nature of the error infecting the conduct of the trial and the appearance of justice.[7] In contrast to *Stewart,* the possibility of prejudice in the instant case must be considered minimal. The trial court examined the jury and discovered that not one juror actually saw the content of the pictures displayed or could identify the persons who held the photographs. The disruption in the trial proceedings was quite short; the polling of the jurors consumed a brief amount of time and the interview in chambers after lunch lasted only fifteen minutes. In short, the attempted exposure of the pictures of the victims to the jury was not "so pregnant with the possibility of improper influence," *Commonwealth v. Stewart,* supra 456 Pa. at 458, 317 A.2d at 621 (Concurring opinion of Justice NIX), or so offensive to the appearance of justice that appellant's right to have his fate determined by the jury first impaneled should be compelled to yield to "the public's interest in fair trials designed to end

---

7. The defendant in *Commonwealth v. Stewart,* supra, eventually filed a habeas corpus petition in federal district court. The district court denied Stewart's petition and, on appeal, the Third Circuit affirmed. *United States ex rel. Stewart v. Hewitt,* 517 F.2d 993 (3rd Cir. 1975). The Third Circuit, like Justices NIX and O'BRIEN, emphasized the great potential for prejudice inherent in the tipstaff's exposure to the jury and stated that the public appearance of impropriety would have necessarily infected the jury.

in just judgments." *Wade v. Hunter, supra,* 336 U.S. at 689, 69 S.Ct. at 837; *Illinois v. Somerville, supra.* The trial court should not have overridden appellant's counselled decision to withdraw his motion for a mistrial[8] and to waive any objection to possible prejudice stemming from the incident.

*Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727 (1972), provides the controlling precedent for our consideration of this appeal. In *Shaffer,* the trial court declared a mistrial *sua sponte* over defendant's objection when the Assistant District Attorney inquired in a voice audible to the jury: "Is the man with the records here?" After being convicted at a retrial, defendant appealed and the Supreme Court vacated his judgment of sentence because the trial court's declaration of a mistrial deprived defendant of his " 'valued right to have his trial completed by a particular tribunal.' " 447 Pa. at 100, 288 A.2d at 733. See also *United States v. Jorn, supra; Wade v. Hunter, supra.*

In *Shaffer,* our Supreme Court allowed the defendant to measure the amount of prejudice caused to his case and to decide whether he wanted the trial to continue. I believe that *Stewart* only displaces the defendant's right to have his trial completed by the jury first impaneled when an error is so manifestly prejudicial as to necessarily poison the jury's deliberations or to bring the processes of justice into public disrepute. The putative prejudice in the instant case, as in *Shaffer,*[9] is not of this magnitude. Resolving, as we must, any doubt as to the propriety of the trial court's decision to abort the proceedings in favor of the liberty of the citizen, *Downum v. United States, supra; Commonwealth v. Bartolomucci, supra; Commonwealth ex rel. Walton v. Aytch,*

8. The trial court declared a mistrial over appellant's objection; it is of no moment constitutionally that appellant had at one time, before the trial court questioned the jury, requested a mistrial. *United States ex rel. Russo v. Superior Court of New Jersey, supra; Commonwealth v. Shaffer, supra.*

9. The prejudice in the case before us may very well have been less harmful than in *Shaffer, supra,* since the trial court questioned the jury and determined that no juror had observed the content of the pictures.

supra, I believe that we must grant appellant's petition for a writ of habeas corpus and order him discharged.[10]

SPAETH, J., joins in this dissenting opinion.

**10.** Implicit in my conclusion that appellant's federal constitutional claim has merit is my belief that there was no "manifest necessity" justifying a declaration of a mistrial pursuant to Rule 1118(b), supra.