410 A.2d 1232

COMMONWEALTH of Pennsylvania, Appellee,

v.

**Widmark MITCHELL, Appellant.**

Supreme Court of Pennsylvania.

Submitted Dec. 14, 1979.

Decided Feb. 1, 1980.

Joseph V. Furlong, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Victor Fortuno, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION

EAGEN, Chief Justice.

Appellant, Widmark Mitchell, was brought to trial in the Court of Common Pleas of Philadelphia on June 6, 1977, for the murder of James Fulton. After the jury was empaneled and sworn, a mistrial was ordered on Mitchell's motion. Thereafter, he moved to dismiss the indictment, claiming that a second prosecution would violate his constitutional right not to be placed twice in jeopardy. The motion was denied, and Mitchell appealed to this Court.[1]

Appellant contends his request for a mistrial was necessitated by conduct of the prosecutor specifically intended to cause a mistrial. If this claim were meritorious, retrial on the same charges would violate the double jeopardy clause. However, our review of the record has disclosed no prosecutorial misconduct in the first proceeding. Thus, we conclude

1. The denial of a pretrial motion to dismiss an indictment on double jeopardy grounds is a final, appealable order. See *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977). See also *Commonwealth v. Haefner*, 473 Pa. 154, 373 A.2d 1094 (1977).

that the double jeopardy clause is no barrier to a new trial of the accused. Accordingly, we affirm the trial court's order denying Mitchell's motion to dismiss and remand for trial.

In deciding whether the circumstances surrounding a mistrial will bar reprosecution on the same charges, we apply the standards established by both Pennsylvania and federal decisions.[2] Ordinarily, the double jeopardy clause does not bar retrial of an accused where an earlier proceeding is terminated prior to judgment. Retrial is permitted where the trial court, because of manifest necessity, declares a mistrial over the defendant's objection, see *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975); *Commonwealth v. Brown*, 451 Pa. 395, 301 A.2d 876 (1973); *Commonwealth v. Lauria*, 450 Pa. 72, 297 A.2d 906 (1972), as well as where a mistrial is granted at defendant's request on the basis of prosecutorial or judicial error. See *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976); *United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion); *Commonwealth v. Metz*, 425 Pa. 188, 228 A.2d 729 (1967); *Commonwealth v. Warfield*, 424 Pa. 555, 227 A.2d 177 (1967); *Commonwealth ex rel. Montgomery v. Myers*, 422 Pa. 180, 220 A.2d 859 (1966). The only exception to the rule permitting retrial is where a defendant's mistrial request is necessitated by prosecutorial error committed intentionally to force the accused to move for mistrial, thereby affording the prosecution another, possibly more favorable, opportunity to convict. *United States v. Dinitz*, supra; *United States v. Jorn*, supra; *Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Commonwealth v. Gravely*, 486 Pa. 194, 198–200, 404 A.2d 1296, 1298 (1979); *Commonwealth v. Hogan*, 482 Pa. 333, 393 A.2d 1133

2. In *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the federal double jeopardy protection was made applicable to the states. Prior to that time, Pennsylvania decisions followed the view that the double jeopardy clause in the Pennsylvania Constitution was applicable only to capital offenses.

(1978) (opinion announcing the decision of the Court); *Commonwealth v. Potter*, 478 Pa. 251, 261, 386 A.2d 918, 922 (1978) (opinion in support of affirmance). When such governmental overreaching or bad faith is found to exist, the double jeopardy clause will bar retrial.

In the instant case, counsel filed a pretrial application to exclude the defendant's prior conviction for murder pursuant to *Commonwealth v. Bighum*.[3] On May 24, 1977, the court entered an order prohibiting the Commonwealth from presenting evidence of the defendant's prior conviction. On June 6, 1977, the case proceeded to trial, and the Commonwealth called as its second witness, Mrs. Shirley McClennan, an eyewitness to the crime. On direct examination, Mrs. McClennan referred to defendant's prior criminal record.[4]

3. In *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973), this Court approved the use of prior convictions for impeaching the credibility of a witness who elects to testify. We suggested, however, that the trial court should exercise its discretion to exclude prior convictions where the defendant has no other means by which to defend himself or where other adequate means of attacking the defendant's credibility are available.

4. The relevant portion of Mrs. McClennan's testimony is as follows:
"A. Well, it was on a Sunday morning. I was getting—like I say, I was getting my sister ready to go to camp and then I heard the door open. So, I hollered downstairs—I said, Jimmy,—I says is that you? So, I didn't hear no answer.
So, I told Corina—I said, sit right here; don't move or don't wiggle. I said, I'm going to see if that's Jimmy.
So, I was half way down the step and Bub and Donald came up the step. Bub had a gun—
"Q. Now, excuse me, ma'am. When you say, 'Bub,' who do you mean?
"A. Sitting right there. (Indicating)
"Q. Indicating the defendant.
Now, when you first saw him, where did you see him in your house?
"A. He was coming up the step and I was going down the the step.
"Q. Okay. And did he have anything with him?
"A. He had a gun.
"Q. Could you describe it to the jury?
"A. It was a shiny gun—little small shiny gun, with reddish brown handle.
"Q. At that point, did you have any conversation with Mr. Mitchell?

Outside the presence of the jury, defense counsel moved for a mistrial on the basis of the witness's prejudicial answer. Following argument on the motion in which defense counsel charged that the Commonwealth had an affirmative burden to prevent its witnesses from testifying to the conviction which the court had excluded from evidence and the assistant district attorney responded that he had instructed the witness to avoid mentioning defendant's prior conviction, the court declared a mistrial due to the prejudicial testimony which, it concluded, could not be cured by a jury instruction.

Immediately thereafter, the court held an evidentiary hearing outside the presence of the jury on the question of whether the assistant district attorney had, in fact, instructed the witness on this matter prior to her testimony. At that time, Mrs. McClennan was recalled to the witness stand.

"A. No. He said—He said, this is a stick-up. He said, I heard you got your checks the other day. I said, well, Bub, I don't have no money.

"[Defense Counsel]: Would you slow down, please, Mrs. McClennan"

"[Prosecutor]:

"Q. Now, when Bub said, this is a stick-up you said something about a check?

"A. Right.

"Q. Would you explain to the jury what you mean by that?

"A. Well, me, my husband and my son—we get a check the third of each month.

"Q. Okay. And who asked about the check?

"A. Bub.

"Q. Would you have any idea how Bub knew about the check?

"A. No, I wouldn't.

"Q. By the way, would you explain to the jury or tell the jury, if you can, how you know Bub.

"A. Well, I met him through my husband's friend.

"Q. And could you give us some background on how long you know him and how many times you have seen him?

"A. I have known him about eight or nine years. And when I lived across the street, he came in the house a few times. And then, after a while, he didn't—you know, I didn't see him around the street and I found out he was in jail for killing a preacher and then—

"[Defense Counsel]: Objection, Your Honor. May I see you at sidebar?

"The Court: Objection sustained.

"[Defense Counsel]: May I see you at sidebar, please, Your Honor?

"The Court: Yes."

In response to questions by defense counsel, she testified that she knew of defendant's prior murder conviction before her brother, the victim in this case, was killed. She also stated that she had discussed her testimony with the assistant district attorney in his office on one occasion a week before trial, but that she was never instructed by anyone acting for the prosecution to say or not to say anything about the defendant's prior conviction.[5]

Upon further questioning, the witness stated that she had no particular reason for telling the jury about the prior murder conviction, but she felt it was important that the

5. The relevant portion of Mrs. McClennan's hearing testimony is as follows:

"Q. Did Mr. Berman tell you that this was going to be a jury trial?
"A. Yes, he did say that it would be a jury trial.
"Q. Okay. And did he explain to you that because it was a jury trial, that you had to be careful of what you said in front of a jury?
"A. He just said tell, you know, what you saw.
"Q. Okay. Did you remember Mr. Berman saying anything specifically to you about, don't mention in front of the jury the pictures that you saw? Do you remember that?
"A. No, he didn't tell me that.
"Q. He didn't tell you that?
"A. No.
"Q. Did he say anything specific to you about, don't say anything in front of the jury about the other time that Bub was arrested for murder?
"A. No.
"Q. He didn't say anything about that?
"A. Uh uh.
"Q. Are you sure?
"A. I'm positive.
"Q. You would remember if he had?
"A. I would remember if he had said it but I don't remember him saying that.
*    *    *    *    *    *
"Q. Okay. Before you took that witness stand today, did anybody; Mr. Berman, any other district attorney, any police officer; did anybody tell you not to say in front of the jury that Mr. Mitchell had been arrested for another murder?
"A. No. Ain't anybody told me nothing.
"Q. You're quite sure of that?
"A. Yeah.
*    *    *    *    *    *
"The Court: Did anybody say to you, be sure that you mention that to the jury, that Mr. Mitchell had been arrested and served time for killing a preacher? Did anybody tell you to say that?
"[Mrs. McClennan]: No."

jury know of it. However, she maintained she did not make the statement because she thought it would help to convict the defendant. When questioned by the assistant district attorney, Mrs. McClennan modified her previous statement and said she did remember his mentioning the term "mug shots" and the word "prejudice" when he reviewed her statement containing the information that the defendant had been arrested for killing another man.

Police Officer Edward Little was also called as a witness at the evidentiary hearing after the court declared a mistrial. He testified to a meeting he attended with several witnesses in the case about a week prior to trial. He stated that, at that time, the assistant district attorney advised the witness, Shirley McClennan, not to mention the defendant's prior conviction.[6]

---

**6.** Officer Little testified as follows:

"A. You asked her at one time how long she had known the deceased—or—I'm sorry—the defendant. I think she stated eight or nine years. She mentioned one time that the defendant had been in jail and you told her not to state that fact.

"Q. Do you recall if I told her why she shouldn't state that fact?

"A. I believe you told her it would be inadmissible.

"Q. And do you recall what she said?

"A. No, I don't.

"Q. Do you recall any similar conversations I had with any of the other witnesses concerning what you just testified to?

"A. I think you made that point clear with all the witnesses, that you didn't want that mentioned.

"Q. I want to draw your attention to one other subject. Do you ever recall me speaking to any of the witnesses and particularly the woman who just testified, Mrs. McClennan, about photographs?

"A. All right. You had conversation with them about photographs but I can't remember the wording used.

"Mr. Berman: Okay. Thank you. Your witness."

Upon further questioning by defense counsel, the witness testified again, as follows:

"Q. And you recall her stating she had known the defendant for eight or nine years—

"A. Yes.

"Q. —and that he had been in jail?

"A. That's correct.

"Q. And it was at that time that Mr. Berman said something to her?

At the conclusion of the evidentiary hearing, the trial judge decided there had been no affirmative misconduct by the assistant district attorney to induce the witness to present prejudicial testimony. The court stated as follows:

"THE COURT: It is unfortunate and I will also state for the record that I have, from the inquiries, every reason to believe that the District Attorney was just as surprised as all of us were when the witness made the gratuitous remark which I found not only inadmissible but highly inflammatory and it was for that reason that I granted the mistrial.

I see—from as much as I know now, I do not see any reason for any reflection on Mr. Berman or anybody in the District Attorney's office, from what I know of the case, which is a very fresh recollection."

Two days after the mistrial declaration, counsel for the defendant moved to dismiss the information on the ground that retrial would violate the defendant's constitutional right against double jeopardy. Testimony from the evidentiary hearing held at the time of mistrial and the testimony of Mrs. McClennan given at the suppression hearing, before the same judge who later presided at trial, was incorporated into the record.[7] After a full hearing on the question of double jeopardy, the defendant's motion to dismiss was denied and this appeal followed.

Appellant maintains that the prosecutor's failure to warn the witness not to mention the prior conviction in the jury's

"A. Well, he told her that it would be inadmissible if she mentioned that on the witness stand.
"Q. Okay. And did he tell her not to say it
"A. I believe so, yes, sir."

7. The witness's suppression court testimony was incorporated into the record for the stated purpose of determining if that testimony should have alerted the prosecution to warn the witness to avoid making any reference at trial to defendant's criminal record. The suppression court testimony makes clear that the court, the assistant district attorney, and the defense counsel were all aware that the witness knew defendant had served time in jail for a prior homicide. No objection to her testimony was made at the time of the suppression hearing, nor was she cautioned on the record by the court or by counsel about mentioning prior convictions of the defendant.

presence amounted to gross negligence which, by itself, is not sufficient to bar retrial. But see *Commonwealth v. Potter*, supra (opinion in support of reversal); *Commonwealth v. Bolden*, supra (plurality opinion). However, he also asserts the assistant district attorney attempted to "cover up" this "commission of an improper act"—*viz.*, failure to warn the witness—by asking the witness to "give us some background on how long you know him and how many times you have seen him." Appellant contends this question was "pointed" and "loaded" and was intended to provoke a mistrial. Under the standard announced in *Commonwealth v. Potter*, supra (opinion in support of affirmance), where the prosecutor is deemed to have been "substantially certain that a mistrial would be declared as a result of his questions to witnesses," retrial of the accused should be barred.

■ We know of no authority to support appellant's view that the Commonwealth had an affirmative duty to caution any witness who knew of defendant's prior criminal record against referring to it in the jury's presence. We agree with the trial court which noted that "for either counsel to be under an affirmative duty to caution the witness . . . seems to be a remote and not compelling duty at best." Thus, we cannot say the failure to warn in this case amounted to prosecutorial bad faith or overreaching justifying discharge. More importantly, the trial court specifically found the prosecution did give the witness a "firm and adequate warning" and there is support in the record for its determination.

■ Further, contrary to appellant's assertion, the question which resulted in the objectionable remark clearly was not intended to elicit the reply the witness gave. Rather, it was intended to elicit information to support the reliability of the witness's identification of the defendant. There is no support in the record for appellant's claim that the prosecutor's question was a ploy to elicit prejudicial information about the defendant's criminal record.

In *Commonwealth v. Potter,* supra, four members of this Court decided that the guarantee against double jeopardy did not bar retrial of the defendant where the prosecutor, in an earlier trial, improperly questioned two witnesses after he had been instructed by the court not to pursue a certain line of questioning. *Id.,* 478 Pa. at 267–273, 386 A.2d at 926–928. Further, in *Commonwealth v. Gravely,* supra (opinion announcing the decision of the Court), we held retrial was not barred where a mistrial was granted after a prosecution witness impermissibly blurted out the results of defendant's polygraph examination. In that case, we refused to attribute the mistrial to the Commonwealth.

■ Likewise, in the instant case, appellant's claim which concerns a prejudicial reference to a prior criminal record by a civilian witness should not be imputed to the Commonwealth, especially in view of the trial court's finding that there was no affirmative misconduct to induce the witness to present inflammatory testimony. See *Commonwealth v. Wright,* 439 Pa. 198, 266 A.2d 651 (1970). We, therefore, affirm the trial court's denial of appellant's motion to dismiss.

ROBERTS, J., filed a concurring opinion.

NIX and LARSEN, JJ., concur in the result.

ROBERTS, Justice, concurring.

I agree with the plurality that the order of the trial court denying appellant's motion to dismiss should be affirmed. I write separately only to make clear what issues truly are in this case. After a full evidentiary hearing, the trial court determined that the Commonwealth cautioned its civilian witness not to refer to appellant's previous conviction, and that the witness nonetheless did so spontaneously. The record clearly supports these determinations. Accordingly, there is no reason here for the plurality to decide that the Commonwealth does not owe "an affirmative duty to caution any witness who knew of defendant's prior criminal record against referring to it in the jury's presence." Plurality opinion at p. ——.

1237. Nor is there any reason on this record to decide the standard under which appellant's claim of prosecutorial misconduct warranting discharge should be tested. Compare, e. g., *Commonwealth v. Potter*, 478 Pa. 251, 260–67, 386 A.2d 918, 922–26 (1978) (Opinion of Pomeroy, J., in Support of Affirmance) (urging intentional standard) with id., 478 Pa. at 282–84, 386 A.2d at 933–34 (Opinion of Roberts, J., in Support of Reversal) (urging gross negligence standard). The record is clear that, under a gross negligence standard, appellant is not entitled to the relief he seeks.