615 A.2d 690
COMMONWEALTH of Pennsylvania, Appellee,

v.

Charles Michael DIEHL, Appellant.

Supreme Court of Pennsylvania.

Argued March 11, 1992.
Decided Sept. 18, 1992.

Gary D. Wilt, Everett, for appellant.

Robert A. Graci, Chief Deputy Atty. Gen., Guy L. Ciarrocchi, Deputy Atty. Gen., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

The basic question we are asked to decide is whether the Superior Court erred in affirming the trial court's denial of Appellant's Motion to Dismiss the charges of involuntary deviate sexual intercourse, statutory rape, incest and two counts of indecent assault on the basis of double jeopardy. Because a manifest necessity did exist for the *sua sponte* declaration of a mistrial and prosecutorial misconduct was absent, we now affirm.

In January of 1989, Amy Diehl, Appellant's sixteen-year-old daughter, filed a complaint against Appellant. It was alleged that during a visit with her father in October, 1985, Appellant forced Amy to engage in sexual relations with him. As a result of the complaint, the formal charges, cited above, were filed against Appellant.

On September 11, 1989, a jury trial commenced in the Court of Common Pleas of Bedford County. The Commonwealth rested its case following testimony by its sole witness, Amy Diehl. The defense then opened with Appellant testifying on his own behalf. During cross-examination of Appellant, the trial court *sua sponte* declared a mistrial following Appellant's response to a question posed by the district attorney.

The case was again placed on the trial calendar for October 23, 1989. In the interim, the district attorney sought and obtained through the Attorney General's Office appointment of Darlee Sill, assistant district attorney of Blair County, to represent the Commonwealth for the new trial. On October 17, 1989, following a hearing on Appellant's Motion to Dismiss on double jeopardy grounds, the trial court denied the motion. Appellant's double jeopardy claim was based on both Article 1 Section 10 of the Pennsylvania Constitution and the Fifth Amendment of the United States Constitution. On appeal, the Superior Court affirmed the trial court's order. 405 Pa.Super. 625, 581 A.2d 971. We then granted Appellant's Petition for Allowance of Appeal.

Appellant's first contention is that a manifest necessity did not exist so as to justify the trial court's *sua sponte* declaration of a mistrial when the basis for the declaration is a conflict of interest on the part of the prosecuting attorney.

Since Justice Story's 1824 opinion in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, it has been well settled that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on where there is a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated. *Commonwealth v. Bartolomucci*, 468 Pa. 338, 362 A.2d 234 (1976),

citing *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). It is important to note that in determining whether the circumstances surrounding the declaration of a mistrial constitute manifest necessity, we apply the standards established by both Pennsylvania and federal decisions. *Commonwealth v. Mitchell,* 488 Pa. 75, 410 A.2d 1232 (1980).

Pennsylvania Rule of Criminal Procedure 1118(b) provides that:

When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.

In accordance with the scope of our review, we must take into consideration all the circumstances when passing upon the propriety of a declaration of mistrial by the trial court. The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. *Commonwealth v. Stewart,* 456 Pa. 447, 452, 317 A.2d 616, 619 (1974), citing *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Additionally, failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury. *Commonwealth, ex rel. Walton v. Aytch,* 466 Pa. 172, 352 A.2d 4 (1976). Finally, it is well established that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant. *Bartolomucci,* 468 Pa. at 347, 362 A.2d 234.

In the case *sub judice,* Appellant had testified that visitation with his daughter ceased after the time of the alleged rape in October of 1985 because his job, as a garage mechanic, precluded him from giving forty-eight hour notice as required by the custody order. It was the Commonwealth's position, however, that Appellant had discontinued

visitation because of the incident with his daughter. When the district attorney on cross-examination sought to impeach Appellant's testimony by confronting him with the fact that he was aware of his job schedule dilemma at the time he signed the custody order, the following exchange occurred which became the focus of the grounds for mistrial:

Q. I mean, you agreed to this Court Order? Is that correct?

A. Yes. You was my attorney.

Q. I was?

A. That's correct.

*By the District Attorney:* May I see that exhibit, please, Your Honor.

(The exhibit was handed to the District Attorney by the Court.)

*By the District Attorney:* Take a look at Commonwealth's Exhibit No. 1, Mr. Diehl. Look at the second page down at the bottom. I want you to look where it says appearances, colon.

A. Yeah, that was—

Q. "For the Plaintiff/Mother, Thomas S. Ling".

A. I came in by myself.

Q. For—

A. I came in by myself. Because I came to your office and talked to you about this whole complete situation, and you told me, and you told my wife which was in your office at the time—

*By the District Attorney:* May we approach the Bench— may we approach the Bench, Your Honor?

*By the Court:* Mr. Diehl, just wait.

(Side–Bar Conference.)

*By the District Attorney:* I don't recall any of this. It may create a problem. I will continue on with the Cross Examination, but it didn't happen this way.

N.T. pp. 90–91.

At this juncture, the trial court recessed the proceedings and reconvened in chambers for approximately two hours to

discuss the situation. The discussion focused on the district attorney's prior representation of Appellant and consideration of less drastic alternatives to declaration of a mistrial. When the trial was reconvened, the parties' positions were placed on the record, out of the presence of the jury. The trial court then *sua sponte* declared a mistrial.

The central issue for the jury to determine was the credibility of the Appellant's testimony versus that of his daughter's testimony. As a result of the exchange set forth above, the jury learned that the person who was seeking Appellant's conviction was the same person who, at least according to Appellant, had advised him with regard to the visitation order in question. This information prejudiced Appellant by implying to the jury that he was guilty of the crimes for why else would the person who had previously represented Appellant now be willing to prosecute him. The record clearly indicates the presence of manifest necessity so as to necessitate the declaration of a mistrial.

Furthermore, the ends of public justice would have otherwise been defeated without the trial court's *sua sponte* declaration of a mistrial. The trial court was insuring that Appellant would receive a trial by a fair and impartial jury which would return a verdict based solely on evidence adduced at trial. This is an interest which is to be protected not only for defendants, but also for the public, which has a compelling interest in justice for all. *Commonwealth v. Stewart,* 456 Pa. at 453, 317 A.2d at 619.

The trial court properly exercised its discretion in *sua sponte* declaring a mistrial because less drastic alternatives were considered during the two-hour recess. Specifically, the trial court considered and rejected as unsatisfactory the options of continuing the case with the district attorney as prosecutor; continuing the case with the assistant district attorney as prosecutor; and continuing the case and obtaining an outside prosecutor. The first alternative was unsatisfactory for the reasons cited above. The last two alternatives were rejected because the assistant district attorney was in private practice with the district attorney and the scheduled two-day

trial was substantially completed. It is also important to note that Appellant argued not to have another attorney appointed to prosecute him.

Appellant's final contention is that even if manifest necessity provided a basis for the declaration of mistrial, double jeopardy precludes retrial due to intentional misconduct by the district attorney. Appellant claims the intentional act the prosecuting attorney committed was the continued representation of the Commonwealth when an apparent conflict of interest existed.

At the hearing on Appellant's Motion to Dismiss, the district attorney testified that Appellant indicated at the preliminary hearing that he had been represented by the district attorney at the time of the August 15, 1985 custody order. Following the preliminary hearing, the district attorney examined the docket at the Prothonotary's Office, obtained a copy of the order, which listed Appellant as appearing *pro se*, and checked his files. The district attorney did not find any indication in his files that he had represented Appellant in the custody proceedings. Although he stated that he could have discussed this matter with Appellant, the district attorney testified that he did not have any recollection of meeting with Appellant at his office. Furthermore, Appellant did not file a Motion to disqualify the district attorney prior to trial and in fact Appellant argued against recusal when this matter arose again at trial.

■ In this Commonwealth, double jeopardy, as it relates to prosecutorial misconduct, will attach where the prosecutorial misconduct is calculated to trigger a mistrial. *Commonwealth v. Bryant*, 524 Pa. 564, 574 A.2d 590 (1990) citing *Commonwealth v. Simons*, 514 Pa. 10, 522 A.2d 537 (1987).

This evidence clearly indicates that the mistrial was not intentionally induced by prosecutorial misconduct. Because the district attorney did not intentionally induce the remark concerning his prior representation of Appellant or otherwise overreach, the motion to dismiss on double jeopardy grounds was properly denied.

Accordingly, we affirm the order of the Superior Court which in turn affirmed the order of the Court of Common Pleas of Bedford County that denied Appellant's Motion to Dismiss on double jeopardy grounds.

McDERMOTT, J., did not participate in the decision of this case.

CAPPY, J., joins in this opinion and files a concurring opinion in which NIX, C.J., joins.

LARSEN, J., files a dissenting opinion.

CAPPY, Justice, concurring.

On the facts of the case under review, I join in the majority's finding that manifest necessity did exist for the trial court's *sua sponte* declaration of a mistrial. I write separately, however, because I do not believe that the majority places the proper emphasis on the need to balance the societal interest in a fair trial against the defendant's right to be tried with due dispatch by a jury of his peers which he has in fact selected.

Under the Double Jeopardy Clause of both the Fifth Amendment to the United States constitution and Art. 1, § 10 of the Pennsylvania Constitution [1], the standard for declaring a mistrial without the defendant's request or consent is whether "there is a manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated." *Commonwealth v. Bartolomucci*, 468 Pa. 338, 345, 362 A.2d 234, 238 (1976), *quoting United States v. Dinitz*, 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267, 273 (1976). Thus, a court may declare a mistrial even over the objection of the defendant. *Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616 (1974), *quoting Gori v. United States*, 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901, 904 (1961). An issue which I believe to be germane to the disposition of this case, however,

1. The Pennsylvania Supreme Court has consistently interpreted Art. 1, § 10 to be co-extensive with the Fifth Amendment of the United States Constitution. *Commonwealth v. Simons,* 514 Pa. 10, 522 A.2d 537 (1987).

has not been addressed: whether the defendant can preclude a finding of manifest necessity by a complete and competent "waiver" on the record upon the occurrence of prejudicial disclosures at trial, without defeating the ends of public justice.

That the "restraints society must observe consistent with the federal Constitution in prosecuting individuals for crime" may be waived by the individual was established in *Miranda v. Arizona*, 384 U.S. 436, 439, 86 S.Ct. 1602, 1609, 16 L.Ed.2d 694, 704 (1966). Speaking of the Fifth Amendment's privilege against self-incrimination, the United States Supreme Court found "[t]he defendant may waive effectuation of these rights, provided that the waiver is made voluntarily, knowingly, and intelligently." *Id.* at 444, 86 S.Ct. at 1612.[2] The case *sub judice* differs slightly in that it concerns the Double Jeopardy provisions of both the Fifth Amendment of the United States Constitution and Art. 1, § 10 of the Pennsylvania Constitution. But, given that this Court allows a defendant to waive the protections attending the privilege against self-incrimination, which have a greater direct effect on the determination of guilt or innocence, it should also accept a defendant's waiver of potential prejudice pursuant to the Double Jeopardy clause, which may affect the determination of guilt or innocence in a less palpable manner.

This acceptance is consistent with the recognition of a defendant's considerable interest in having his case heard by the jury which is impaneled. *E.g., Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616 (1974); *Commonwealth ex rel. Walton v. Aytch*, 466 Pa. 172, 352 A.2d 4 (1976). Failure to accept the waiver would impair the ability of a defendant to protect that interest. It would also deprive that defendant, whose liberty and perhaps life is at stake, from determining what, if any, impact a disclosure may have on a particular jury, for the sake of protecting what is characterized in *Stewart* as the public's "compelling interest in justice for all."

2. For such a waiver of a constitutionally protected right to be effective, this Court has previously required the defendant or his counsel to take affirmative action to inform the court of that decision. *Commonwealth v. Lewis*, 528 Pa. 440, 598 A.2d 975 (1991).

*Stewart,* 456 Pa. at 453, 317 A.2d at 619. "[T]he judge must temper the decision [to declare a mistrial] by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through a tribunal he might believe to be favorably disposed to his fate." *Commonwealth v. Ferguson,* 446 Pa. 24, 29, 285 A.2d 189, 191 (1971).

To declare a mistrial the incident must be of such a nature that its unavoidable effect is to deprive the individual of a fair trial. *Commonwealth v. Hernandez,* 498 Pa. 405, 415, 446 A.2d 1268, 1273 (1982). The manifest necessity for a new trial has not been rigidly defined but is rather determined on the circumstances of each case. *Commonwealth v. Bycer,* 254 Pa.Super. 336, 385 A.2d 1367 (1978).

When a defendant and his counsel recognize the possible or actual prejudice and consent to it by placing a waiver on the record, it is difficult to see how the unavoidable effect of disclosure would be to deprive the defendant of a fair trial. To me the opposite conclusion follows; the defendant felt that this jury, even with its possibly prejudicial knowledge, was his best chance at a fair trial. Thus I would conclude that when a defendant has been made aware of the potential prejudice and asserts a competent waiver of record (see *Lewis*) the needs of society have been fulfilled and the manifest necessity is eliminated. I find it difficult to believe that the public's interest in "fair trials designed to end in just judgments", *Stewart,* 456 Pa. at 452, 317 A.2d at 619, *quoting Illinois v. Somerville,* 410 U.S. 458, 470, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425, 434 (1973), is not only more compelling but also exclusive of the interest of the individual on trial. In my view, the public interest is satisfied by the knowledge that the defendant and his counsel appreciate the possible prejudice and accept it through a waiver.

Turning to the facts of the case *sub judice,* I find that there is no indication of record that there was a complete and competent waiver of the potential prejudice resulting from the prior representation of the defendant by the district attorney. The subject had been discussed prior to trial but I cannot determine in what detail the subject had been discussed or if a

final understanding was reached during the course of the trial. That the defendant's counsel was willing to continue with the trial does not constitute a waiver of the possible prejudice. This decision may have been designed to force the court to declare a mistrial and then bar retrial through a double jeopardy claim or it may have resulted from other undetermined strategies. Absent a clear waiver, I join in the opinion of the Court.

NIX, C.J., joins in this concurring opinion.

LARSEN, Justice, dissenting.

I dissent. The trial judge erred in declaring a mistrial because a manifest necessity did not exist for the declaration of a mistrial. I would reverse the Superior Court and order the instant action dismissed on the basis that retrial would violate the Double Jeopardy provisions of the United States and Pennsylvania Constitutions.

In determining whether retrial after mistrial is permissible, the question is whether the trial court properly exercised its discretion in finding that either manifest necessity or the ends of public justice required the declaration of a mistrial. *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); *Commonwealth ex. rel. Walton v. Aytch,* 466 Pa. 172, 352 A.2d 4 (1976), *cert. denied,* 429 U.S. 867, 97 S.Ct. 178, 50 L.Ed.2d 147 (1976). The propriety of the exercise of discretion by the trial court must be free from doubt. *Commonwealth v. Bycer,* 485 Pa. 224, 401 A.2d 740 (1979); *Commonwealth v. Bartolomucci,* 468 Pa. 338, 362 A.2d 234 (1976). Therefore, a very low abuse of discretion standard and a very high manifest necessity standard is applied to these cases. This eliminates the wide discretion often accorded judges because of the potential for manipulation of the judicial system. Thus, on review, the trial judge's decision of mistrial must be scrupulously scrutinized and only where the decision is free from doubt should the decision be upheld. The majority finds, in this case, that the trial judge did not abuse his discretion and that both manifest necessity and the ends of public justice

required the declaration of a mistrial as there was a possible conflict of interest on the part of the prosecuting attorney.

I believe, and case law demonstrates, that a manifest necessity exists only where it is *absolutely* obvious from the circumstances that the original tribunal would be unable to complete the trial at all or where it is *absolutely* certain that a defendant would not receive a fair trial. *See, e.g. Commonwealth v. Mehmeti,* 501 Pa. 589, 462 A.2d 657 (1983) (jury hopelessly deadlocked); *Commonwealth v. Murry,* 498 Pa. 504, 447 A.2d 612 (1982) (jury hopelessly deadlocked); *Commonwealth v. Robson,* 461 Pa. 615, 337 A.2d 573 (1975), *cert. denied,* 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1975) (illness of presiding judge); *Commonwealth v. Stewart,* 456 Pa. 447, 317 A.2d 616 (1974), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3078, 41 L.Ed.2d 670 (1974) (victim's father was tipstaff tending jurors); *Commonwealth v. Brown,* 451 Pa. 395, 301 A.2d 876 (1973) (jury hopelessly deadlocked). In other words, there must be a compelling reason serious enough to outweigh the interest of the defendant in obtaining a final resolution of the case against him. That is not the case here. By holding that a manifest necessity existed in this case, the majority grossly deviates from established case law.

The basis for the declaration of mistrial in this case was an alleged conflict of interest on the part of the prosecuting attorney. It is not at all clear from the record that an actual or even potential conflict of interest existed. Pennsylvania Rule of Professional Conduct 1.9(a) provides that a conflict of interest exists *only* where the present proceeding involves "the same or a *substantially* related matter" as the previous matter (emphasis added). The criminal matter at issue in this case is not even remotely related, let alone *substantially* related, to the attorney's prior representation of appellant in the custody matter four years earlier. Even if there were a conflict of interest, there is no evidence that appellant was or would have been prejudiced by the purported conflict of interest on the part of the district attorney. Neither appellant nor the district attorney requested the mistrial. In fact, it was appellant's express desire to continue with the trial.

Appellant was willing to consent to any conflict of interest that potentially existed.[1] In this case, appellant made a counseled decision to waive any potential conflict and not to seek a mistrial.[2] The interests of justice could have only been protected in this case by allowing the defendant to have his trial completed by the tribunal in which it was initiated and to have his fate determined by the jury first impaneled. Since that is now impossible, the only remedy is to bar retrial.

The majority concedes that it is well established that *"any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant."* Majority at 691, citing *Commonwealth v. Bartolomucci*, 468 Pa. 338, 362 A.2d 234 (1976) (emphasis added). In this case, it is beyond *any doubt* that the *sua sponte* declaration of a mistrial was not warranted, needed or proper. I would reverse the Superior Court's order affirming the trial court's denial of appellant's motion to dismiss on the basis of double jeopardy.

---

1.  Pennsylvania Rule of Professional Conduct 1.9(a) expressly permits a client to consent to representation where a conflict of interest exists. As the comment to Rule 1.9 points out, "[d]isqualification from subsequent representation is for the protection of clients and can be waived by them."

2.  I agree with Mr. Justice Cappy that a defendant can consent to possible or actual prejudice by placing a waiver on the record. I disagree, however, with his conclusion that the facts of the case *sub judice* do not give rise to a complete and competent waiver. The defendant's objection to the declaration of a mistrial and his express desire and readiness to proceed with the trial were clearly a sufficient waiver. We have held that waiver has occurred as a matter of law on the basis of much less assertive behavior. *See, Commonwealth v. Brown*, 497 Pa. 7, 438 A.2d 592 (1981) (defendant's silence constituted waiver of Rule 1100 rights).