J-A29008-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRIAN LEE ANDERSON, | : | |
| | : | |
| Appellant | : | No. 78 WDA 2013 |

Appeal from the Judgment of Sentence December 12, 2012,
Court of Common Pleas, Allegheny County,
Criminal Division at No. CP-02-CR-0016419-2007

BEFORE:  DONOHUE, ALLEN and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.: **FILED NOVEMBER 26, 2014**

Appellant, Brian Lee Anderson ("Anderson"), appeals from the judgment of sentence entered on December 12, 2012 by the Court of Common Pleas of Allegheny County, Criminal Division, following his convictions for possession of a controlled substance,[1] possession of a controlled substance with the intent to manufacture or deliver,[2] and the use of, or the possession with intent to use, drug paraphernalia.[3]  After careful review, we vacate the judgment of sentence.

Because the issues that Anderson raises on appeal are procedural in nature, a recitation of the facts underlying his convictions is unnecessary.  It suffices to say that on August 8, 2007, police charged Anderson with the

_____

[1]  35 P.S. §  780-113(a)(16).

[2]  35 P.S. §  780-113(a)(30).

[3]  35 P.S. §  780-113(a)(32).

*Retired Senior Judge assigned to the Superior Court.

above-referenced crimes following a search of his apartment pursuant to a warrant during which they discovered 13.36 grams of crack cocaine, a digital scale, and Ziploc baggies, some of which had their corners removed. *Commonwealth v. Anderson*, 40 A.3d 1245, 1246 (Pa. Super. 2012), *appeal denied*, 51 A.3d 837 (Pa. 2012). The trial court appointed the Allegheny County Office of the Public Defender to represent Anderson, who assigned Attorney Leslie Perlow ("Attorney Perlow") to the case.

On April 12, 2010, Anderson's case proceeded to trial and the court swore in the jury that same day. N.T., 4/12/10, at 14. Prior to the empaneling of the jury, Anderson expressed his concern about the absence of certain individuals that he wanted to call as defense witnesses. *See id.* at 2-11. Anderson believed that these witnesses would support the defense that he wished to pursue, namely that someone broke into his apartment and planted the drugs. *See id.* Attorney Perlow then stated the following:

> [Attorney Perlow]: Your Honor, if I may, there was a breakdown in communications here. I received this case after several other members of my office had it. [Anderson] was in the jail. This case was before Judge Manning. It was postponed. I sent my investigator to the jail. I was given the name of somebody -- he was given the name of somebody by the name of Tammy for him to interview and a Tish for him to interview. Never were these other people interviewed.
>
> I would like the [c]ourt and the record to note that anybody that was asked to be interviewed or subpoenaed, there was an attempt for that to be done. I checked. I saw [Anderson] at the jail prior

- 2 -

to his release. … He was going to call me [after his release] and did not.

This has been a very combative morning, as the [c]ourt is aware. He has an idea what his defense is; and what I'm legally obligated to do are two very different things. We're kind of in a quandary now. I believe none of these witnesses go to the core of this case. Some of the issues are secondary as to his cooperation, and I believe the Commonwealth will agree with me, the timeline as to what he's going to testify to.

I just think that it's important to make the record clear that it's not for lack of trying that these witnesses aren't here. It's for lack of knowledge of them that they're not here. The first time I heard of this woman, McNeal, he showed me a piece of paper this morning with a sworn statement on it. I explained to him, you … can't -- The Commonwealth cannot cross-examine a piece of paper.

*Id.* at 11-12. The trial court then suggested that Anderson would benefit if he and Attorney Perlow communicated better with one another. *See id.* at 13. Anderson responded: "We communicate fine. I just -- I'd like to have someone else, not her." *Id.*

On April 13, 2010, prior to the start of the second day of trial, Anderson once again complained that Attorney Perlow did not subpoena certain individuals and that she was giving him "bad advice." N.T., 4/13/10, at 106-07. The trial court then declared a mistrial based on its belief that Anderson was not receiving effective representation from Attorney Perlow. *See id.* That same day, the trial court entered an order scheduling a new trial for Anderson and directing the Office of the Public Defender to assign

another attorney to represent him. The Office of the Public Defender assigned Attorney Aaron Sontz ("Attorney Sontz") to represent Anderson.

On January 3, 2011, Anderson filed a motion to bar retrial on the grounds of double jeopardy. On February 16, 2011, Anderson filed a supplemental motion to suppress the evidence seized from his apartment. On April 6, 2011, the trial court held a hearing on Anderson's suppression motion and subsequently granted the motion on April 8, 2011. On April 21, 2011, the Commonwealth appealed the trial court's order granting Anderson's suppression motion. On March 19, 2012, a three-judge panel of this Court reversed the trial court's suppression order and remanded the case for trial.[4]

On December 10, 2012, prior to the swearing in of the jury for his second trial, Anderson renewed his motion to bar prosecution on the grounds of double jeopardy. N.T., 12/10/12, at 3-4. The trial court stated that it had no basis to grant this motion because our Court reversed his suppression order and the trial court felt compelled to move the matter forward in accordance with the directives from this Court. *See id.* at 4. On December 11, 2012, following two days of trial, the jury found Anderson guilty of all charges. N.T., 12/11/12, at 162. Following the verdict, the trial

---

[4] On August 23, 2012, the Supreme Court of Pennsylvania denied Anderson's petition for allowance of appeal.

court sentenced Anderson to a mandatory minimum sentence of five to ten years of incarceration plus ten years of probation. *Id.* at 165-66.

On January 10, 2013, Anderson filed a timely notice of appeal. On January 16, 2013, the trial court ordered Anderson to file a concise statement of the errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On July 26, 2013, Anderson filed a timely Rule 1925(b) statement.[5]

On appeal, Anderson raises the following issues for review:

> 1. Were [Anderson]'s state and federal double jeopardy and due process rights violated when the [t]rial [c]ourt (A) declared a mistrial at [his] first trial absent a defense request for a mistrial and absent manifest necessity to declare one (the [c]ourt's uninformed displeasure with defense counsel's representation being insufficient to establish manifest necessity), and then (B) denied [Anderson]'s subsequent motion, filed between his first aborted trial and his second trial, seeking to dismiss the charges against him with prejudice owing to the violation of his state and federal constitutionally-based double jeopardy and due process rights?
>
> 2. Was [Anderson] illegally sentenced, and were his state and federal due process and jury trial rights simultaneously violated, when the [t]rial [c]ourt, rather than a jury, decided one of the facts necessary to determine applicability of the 18 [Pa.C.S.A.] § 7508 mandatory minimum sentence (and did so based upon the preponderance of the evidence standard rather than the beyond a reasonable doubt standard of proof)?

---

[5]  The trial court granted Anderson three time extensions, on February 28, 2013, May 9, 2013, and June 13, 2013, to file his Rule 1925(b) statement.

Anderson's Brief at 3.[6]

For his first issue on appeal, Anderson claims that the trial court should not have retried him based on the principles of double jeopardy under both the Pennsylvania and United States Constitutions. Article I, Section 10 of the Pennsylvania Constitution provides that "[n]o person shall for the same offense, be twice put in jeopardy of life or limb … ." PA. CONST. art. I, § 10. The Fifth Amendment to the United States Constitution states that "… nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The protections against double jeopardy under the Pennsylvania and United States Constitutions are coextensive and thus courts may analyze them together. *Commonwealth v. Cosnek*, 836 A.2d 871, 873 n.2 (Pa. 2003); *Commonwealth v. Buffington*, 828 A.2d 1024, 1029 (Pa. 2003); *Commonwealth v. Barber*, 940 A.2d 369, 377 (Pa. Super. 2007), *appeal denied*, 960 A.2d 835 (Pa.

---

[6] Anderson raised a sufficiency of the evidence claim in his Rule 1925(b) statement, but failed to include the issue in the statement of questions involved section of his appellate brief. *See* Rule 1925(b) Statement, 7/26/13, ¶ 2; Anderson's Brief at 3. "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). As a result, Anderson has waived his sufficiency claim. Waiver is further supported by the fact that Anderson included no argument on the issue in his appellate brief. *See* Anderson's Brief at 24-60. Where an "[a]ppellant has cited no legal authorities nor developed any meaningful analysis, we find [the] issue waived for lack of development." *Commonwealth v. McLaurin*, 45 A.3d 1131, 1139 (Pa. Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013) (citing Pa.R.A.P. 2119(a)); *see also Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009)).

2008); ***Commonwealth v. States***, 891 A.2d 737, 742 (Pa. Super. 2005), *affirmed*, 938 A.2d 1016 (Pa. 2007).

Our standard of review with respect to the granting of a mistrial and its effect on double jeopardy is as follows:

> It is within a trial judge's discretion to declare a mistrial sua sponte upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision. Where there exists manifest necessity for a trial judge to declare a mistrial sua sponte, neither the Fifth Amendment to the United States Constitution, nor Article I, § 10 of the Pennsylvania Constitution will bar retrial.

***Commonwealth v. Hoovler***, 880 A.2d 1258, 1260 (Pa. Super. 2005) (quoting ***Commonwealth v. Kelly***, 797 A.2d 925, 936 (Pa. Super. 2002)), *appeal denied*, 890 A.2d 1057 (Pa. 2005)).

In ***Commonwealth v. Diehl***, 615 A.2d 690 (Pa. 1992), our Supreme Court described the applicable legal standards when considering whether manifest necessity for a trial court's sua sponte declaration of a mistrial existed:

> Since Justice Story's 1824 opinion in ***United States v. Perez***, it has been well settled that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on where there is a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated. It is important to note that in determining whether the circumstances surrounding the declaration of a mistrial constitute manifest necessity, we apply the standards established by both Pennsylvania and federal decisions.

> Pennsylvania Rule of Criminal Procedure [605(B)] provides that:
>
>> When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.
>
> In accordance with the scope of our review, we must take into consideration all the circumstances when passing upon the propriety of a declaration of mistrial by the trial court. The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. Additionally, failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury. Finally, it is well established that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant.

*Id.* at 691 (citations omitted).

Moreover, in **Commonwealth v. Leister**, 712 A.2d 332 (Pa. Super. 1998), *appeal denied*, 732 A.2d 613 (Pa. 1998), this Court recognized that the trial judge, "who is the foremost authority in his or her courtroom," is usually best positioned to determine the necessity of a mistrial. **Id.** at 335 (citing **Wade v. Hunter**, 336 U.S. 684, 688 (1949); **In Interest of**

*Morrow*, 583 A.2d 816, 818 (Pa. Super. 1990)). "[T]here can be no rigid rule for finding manifest necessity since each case is individual." ***Commonwealth v. Orie***, 88 A.3d 983, 996 (Pa. Super. 2014), *appeal denied*, 99 A.3d 925 (Pa. 2014). However, "'the discretion to discharge the jury before it has reached a verdict is to be exercised only in very extraordinary and striking circumstances[.]'" ***Commonwealth v. Bradley***, 457 A.2d 911, 914 (Pa. Super. 1983), *aff'd*, 470 A.2d 524 (Pa. 1984) (quoting ***Downum v. United States***, 372 U.S. 734, 736 (1963)).

The trial court addressed Anderson's double jeopardy claim as follows:

> On day two of the [April 2010 trial], Anderson spoke to the [c]ourt. He was complaining about subpoenas that he wanted his lawyer to serve upon various witnesses. He also leveled a complaint about the quality of his lawyer. "I don't feel I got the representation I should. I'm getting bad advice from my attorney." The [c]ourt agreed with his assessment and declared a mistrial.
>
> The [c]ourt felt then, as it does now, that Anderson was asking for the trial to stop so he could defend the accusations with a new lawyer, a better lawyer, and one that was on the same page as him as far as strategy. In this [c]ourt's eyes, having all the players in front of it and reading things the cold, hard transcript would never reflect, agreed with Anderson's request to terminate the trial and grant him the relief that he was, at the very least, implicitly asking for. But, he who asks for a mistrial cannot then later wear the protective shield known as double jeopardy.
>
> Assuming for the moment that Anderson did not ask for the result he got, manifest necessity was present. A fundamental principle of our system is the

presence of a lawyer to assist the citizen accused in defending criminal charges. From what the Court observed, Anderson was not being provided his guaranteed right to an effective lawyer. There is not one incident that the [c]ourt hangs its hat on but a collection of events that led to the [c]ourt's action.

Contributing to the [c]ourt's thinking that no double jeopardy violation took place is the case history. When the first trial was stopped, a motion was filed soon thereafter seeking to bar the government another opportunity to convict Anderson. That [January 2011] motion was never mentioned again. Well, that is, until the appeal was filed. But, isn't it a bit late at that point? Some 31 months passed from the first trial ([April 2010]) until the second ([December 2012]). The case made a trip to the Superior Court and the government prevailed thereby returning the case for trial. Once this court had jurisdiction again, Anderson never said, "Timeout. This second trial can't take place. It is barred by double jeopardy." He had the time, but choose [sic] to be quiet. The [c]ourt feels Anderson abandoned the claim.

Trial Court Opinion, 2/12/14, at 4 (record citations omitted).

Anderson argues that the trial court incorrectly concluded that he requested a mistrial. Anderson's Brief at 27-34. Anderson contends that on the second day of his first trial, when he expressed his dissatisfaction with Attorney Perlow's representation and asked what his options were, it was not a pro se request for a mistrial, but rather merely a request for information. *Id.* Additionally, Anderson asserts that there is no evidence supporting the trial court's belief that manifest necessity justified the mistrial declaration. *Id.* at 34-42. Anderson argues that a disagreement between an attorney

- 10 -

and his or her client regarding trial strategy, specifically here Attorney Perlow's decision not to subpoena certain witnesses that Anderson wanted to examine, is insufficient to support a finding of manifest necessity. *Id.* Furthermore, Anderson asserts that the record does not support the trial court's contention that he abandoned, and consequently waived, his double jeopardy claim by failing to mention it following his January 3, 2011 motion. *Id.* at 42-47.

We conclude that the trial court should not have retried Anderson because his second trial was barred based on the protections of double jeopardy. First, the record does not support the trial court's finding that Anderson requested a mistrial. The transcript of Anderson's first trial at the time the trial court declared a mistrial reveals the following:

> [Anderson]: Yes, sir. It doesn't look like these subpoenas are being represented, even though I gave them. I'm not an officer of the court. Also, I don't feel I got the representation I should. I'm getting bad advice from my attorney. I need to know my options as of right now.
>
> The Court: I'm going to declare a mistrial. I agree with you.
>
> [Anderson]: What about these subpoenas?
>
> The Court: You can tear them up. I'm going to get you another attorney. I'm going to instruct the jury that this has not been an effective trial. I'm going to have to you [sic] pick a new date; and I'm going to get someone else appointed to represent you.

N.T., 4/13/10, at 106-07. Thus, the record reflects that Anderson at no point requested a mistrial, asked for another trial, or for anything similar. *See id.* Rather, Anderson merely asked the trial court what his options were after voicing displeasure with Attorney Perlow's representation. *See id.*

Moreover, even if Anderson had requested a mistrial, he had counsel, and that counsel at no point requested a mistrial based on her and her client's inability to agree on trial strategy.[7] "It is well established that 'there is no constitutional right to hybrid representation either at trial or on appeal[.]'" *Commonwealth v. Faulk*, 21 A.3d 1196, 1202 (Pa. Super. 2011) (quoting *Commonwealth v. Ali*, 10 A.3d 282, 293 (Pa. 2010)). Therefore, even had Anderson himself requested a mistrial, the trial court

---

[7] The Commonwealth argues that Anderson requested a mistrial during the first day of his first trial in the middle of Officer Michael Catanzaro's ("Officer Catanzaro") testimony. Commonwealth's Brief at 6-10. In his testimony, Officer Catanzaro referenced several of Anderson's prior bad acts and convictions. N.T., 4/12/13, at 39, 41, 44, 47-48. While Officer Catanzaro was still on the witness stand, Attorney Perlow requested a sidebar during which she objected to this testimony and requested a mistrial. *Id.* at 48-50. The trial court gave the jury a cautionary instruction, to which Attorney Perlow did not object. *See id.* at 51. The Supreme Court of Pennsylvania has held that when the trial court provides a curative instruction, and the defendant fails to object to that curative instruction, it indicates that the defendant is satisfied with the curative instruction and that any prejudice has been cured because the jury is presumed to follow the court's instructions. *Commonwealth v. Jones*, 668 A.2d 491, 504 (Pa. 1995). Moreover, because the trial court clearly based its decision to declare a mistrial on the second day of trial based on its dissatisfaction with Attorney Perlow's representation, *see* Trial Court Opinion, 2/12/14, at 4, the Commonwealth cannot now successfully argue that the trial court granted the request for a mistrial based on Officer Catanzaro's testimony regarding prior bad acts.

could not have entertained such a request. A request for a mistrial would have had to come from Attorney Perlow. Accordingly, the record does not support the trial court's conclusion that Anderson requested a mistrial.

Second, the record also does not support the trial court's finding that manifest necessity compelled a mistrial in this case. Our Court has held that "'[m]istrials should be granted only when an incident is of such a nature that its unavoidable effect is to deprive [an] appellant of a fair trial.'" ***Commonwealth v. Johnson***, 815 A.2d 563, 573 (Pa. 2002) (quoting ***Commonwealth v. Lewis***, 567 A.2d 1376, 1383 (Pa. 1989)). The trial court indicated that it believed manifest necessity existed in this case because Attorney Perlow was not providing Anderson with effective assistance of counsel, though it could not point to one incident and instead found that "a collection of events … led to the [c]ourt's action." Trial Court Opinion, 2/12/14, at 4. The record reveals two complaints that Anderson made about Attorney Perlow as his counsel: that she did not subpoena certain individuals that he wanted to testify and that she was giving him "bad advice." ***See*** N.T., 4/12/10, at 2-12; N.T., 4/13/10, at 106-07.

"[C]laims of ineffective assistance of trial counsel in Pennsylvania generally are deferred to … review [under the Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546,] and generally are not available on direct appeal." ***Commonwealth v. Holmes***, 79 A.3d 562, 583 (Pa. 2013). Nevertheless, the elements a petitioner under the PCRA must establish in order for a court

to find counsel ineffective for failing to call a witness are helpful to us in determining whether there is any evidence in this case to support the trial court's conclusion that Attorney Perlow was ineffective. In order for counsel to be ineffective for failing to call a witness at trial under the PCRA, the petitioner must establish that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Sneed*, 45 A.3d 1096, 1109 (Pa. 2012). Here, there was no indication that any of the witnesses Anderson wished to call were available to testify, that Attorney Perlow knew of, or should have known of, the existence of any of the individuals prior to the morning of the first day of Anderson's first trial, or that the absence of the testimony of these witnesses was prejudicial to Anderson. *See* N.T., 4/12/10, at 2-12; N.T., 4/13/10, at 106-07. In fact, Attorney Perlow stated for the record her belief that none of the witnesses Anderson wished to subpoena would be helpful to his case. *See* N.T., 4/12/10, at 11-12.

Thus, there is no evidence of record that anything occurred that had the unavoidable effect of depriving Anderson of a fair trial or anything indicating extraordinary and striking circumstances necessitating a mistrial. *See Johnson*, 815 A.2d at 573; *Bradley*, 457 A.2d at 914. All that

transpired was that Anderson wanted to call certain individuals as witnesses and Attorney Perlow made the decision not to call those witnesses based on either her inability to track them down or her belief that they would not help his case. *See* N.T., 4/12/10, at 2-12; N.T., 4/13/10, at 106-07. Our Court has stated that "'[a]lthough there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial.'" *Commonwealth v. Brown*, 18 A.3d 1147, 1162 (Pa. Super. 2011) (quoting *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988)). Furthermore, there is no indication in the record what "bad advice" Attorney Perlow was giving to Anderson. *See* N.T., 4/13/10, at 106-07. Therefore, the certified record does not support the trial court's determination that manifest necessity compelled the declaration of a mistrial because there is no evidence that Attorney Perlow did not provide Anderson with effective assistance of counsel.[8]

Moreover, there is likewise no indication, either in the transcript of Anderson's first trial or the trial court's Rule 1925(a) opinion, that the trial

---

[8] Further confirming the notion that the record does not support a finding that Attorney Perlow was ineffective is the fact that Attorney Sontz subpoenaed two of the individuals that Anderson wanted to testify at his first trial and neither of the two witnesses ended up testifying at his second trial. *See* N.T., 12/11/12, at 90-97. Attorney Sontz was unable to locate one of the individuals he subpoenaed. *See id.* at 90-92. The other witness only appeared for the first day of trial, but Attorney Sontz did not believe her testimony would help Anderson's case anyway. *See id.*

court considered any alternatives to declaring a mistrial. *See Diehl*, 615 A.2d at 691. For example, the trial court could have continued the trial to a later date to allow Attorney Perlow time to either track down the individuals Anderson wanted to call as witnesses or allow her time to fully explain to Anderson that these witnesses would not benefit his case. The "failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial[.]" *Id.*

Third, the trial court incorrectly determined that Anderson waived his double jeopardy claim. This Court has held that a double jeopardy claim is timely when an appellant raises such a claim prior to retrial. *See Commonwealth v. Perrin*, 414 A.2d 650, 652 (Pa. Super. 1979) ("It is generally correct that a defendant need not raise a double jeopardy issue in post-trial motions and that they may properly be raised prior to a retrial."). The trial court asserts that Anderson never referenced the January 3, 2011 motion that he filed after the trial court declared a mistrial during his first trial on April 13, 2010 and prior to his second trial, which sought to bar his second trial on the grounds of double jeopardy. *See* Trial Court Opinion, 2/12/14, at 4. However, the record belies the trial court's contention.

The record reveals that on December 10, 2012, during a hearing immediately preceding Anderson's second trial, Attorney Sontz, his second

appointed trial attorney, brought the January 3, 2011 motion to the trial court's attention:

> [Attorney Sontz]: We have some pretrial motions, Your Honor.
>
> The Court: Okay.
>
> [Attorney Sontz]: First, we renew the motion to bar prosecution under grounds of double jeopardy. After this case was appealed to the Superior Court and then remanded back to the Court of Common Pleas, I don't really know how that affects any other previous rulings regarding the motion for double jeopardy; but I did file an omnibus pretrial motion that included the motion to bar trial on the grounds of double jeopardy, and we put forth our reasons in the that motion.
>
> The Court: I understand your argument, but at this point[,] I have no basis to accept that. This case went to the Superior Court, and the Superior Court remanded it. My original ruling where I suppressed evidence, that reasoning was rejected and it was sent back, and that's what we're here to do now. So I'm going to move forward with what directives I've gotten in this matter.

N.T., 12/10/12, at 3-4. Thus, the record reflects that Anderson timely raised his double jeopardy claim in both a written and oral motion prior to his second trial. *See Perrin*, 414 A.2d at 652. Accordingly, the record does not support the trial court's conclusion that Anderson waived his double jeopardy claim.[9]

---

[9] The Commonwealth argues that Anderson waived his double jeopardy claim because he failed to object when the trial court declared a mistrial. Commonwealth's Brief at 10-11. However, our Court has repeatedly held

- 17 -

Therefore, we conclude that the trial court incorrectly determined the following: that Anderson requested a mistrial, that manifest necessity compelled a mistrial, and that Anderson waived his double jeopardy claim. Thus, the trial court sua sponte declared a mistrial without manifest necessity and Anderson properly raised his double jeopardy claim before the trial court prior to his second trial. Therefore, the trial court should not have retried Anderson because his second trial was barred on double jeopardy grounds. Accordingly, we vacate Anderson's judgment of sentence.[10]

Judgment of sentence vacated. Jurisdiction relinquished.

---

that an appellant's "mere acquiescence to the sua sponte grant of a mistrial by the trial judge is not sufficient to waive his double jeopardy claims." **Commonwealth v. McCord**, 700 A.2d 938, 942 (Pa. Super. 1997); **see also Commonwealth v. Rivera**, 715 A.2d 1136, 1138 (Pa. Super. 1998). Accordingly, the Commonwealth's argument is without merit.

[10] Because we vacate Anderson's judgment of sentence on double jeopardy grounds and Anderson will therefore be discharged, we need not address his illegal sentence issue. However, we note for completeness that the sentence imposed by the trial court was illegal pursuant to **Alleyne v. U.S.**, 133 S. Ct. 2151, 2158, 186 L. Ed. 2d 314 (2013), which held that "[f]acts that increase the mandatory minimum sentence are therefore elements [of a charged offense] and must be submitted to the jury and found beyond a reasonable doubt." **Id.**; **see also Commonwealth v. Newman**, 99 A.3d 86, 90-98 (Pa. Super. 2014) (en banc). Here both the trial court and the Commonwealth acknowledge that Anderson received a mandatory minimum sentence without a jury having found the facts triggering the mandatory minimum beyond a reasonable doubt. **See** Trial Court Opinion, 2/12/14, at 6; Commonwealth's Brief at 17-19. Therefore, the trial court and the Commonwealth concede that Anderson would be entitled to resentencing. **See id.**

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/26/2014</u>