J-A22009-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DENNIS R. STEELE | |
| Appellant | No. 197 MDA 2014 |

Appeal from the Order January 13, 2014
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000308-2012

BEFORE:  PANELLA, J., SHOGAN, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.          **FILED FEBRUARY 24, 2015**

Appellant, Dennis R. Steele, appeals from the order entered January 13, 2014, in the Court of Common Pleas of Lycoming County, which denied his pre-trial motion to dismiss charges based on double jeopardy.[1]  The trial court previously declared a mistrial, finding manifest necessity, after Steele's counsel intentionally subverted the Rape Shield Law during cross-examination of the victim, his granddaughter.  We affirm.

The Commonwealth filed charges against Steele alleging that he sexually assaulted his biological granddaughter, a nineteen-year-old girl at

---

[*] Former Justice specially assigned to the Superior Court.

[1] This order is immediately appealable as a collateral order.  **See** Pa.R.A.P. 313, *Note*.

the time of the alleged assault. Prior to trial, Steele filed a motion seeking to offer evidence at trial of specific instances of his granddaughter's sexual conduct on the day of the alleged assault. Specifically, that she had sexual relations with two men, her boyfriend and a former boyfriend, on the day of the incident with her grandfather. Steele alleged that the evidence of her sexual conduct was relevant to her credibility and bias. The trial court conducted an in camera hearing and denied the motion, finding that the evidence of the victim's sexual conduct was inadmissible under the Rape Shield Law, 18 Pa.C.S.A. § 3104(a).

The matter proceeded to trial. The defense theory was that the victim consented to having sex with her grandfather.[2] During her direct testimony, the victim recounted the sexual assault—that her grandfather fondled her breasts, digitally penetrated her vagina, forced her to touch his penis, and performed oral sex on her. She also testified that while he did these acts, her grandfather told her that she looked like her grandmother did thirty years ago.

On cross-examination, counsel for Steele asked the victim if her former boyfriend visited her. She answered he did. Counsel then asked what time he came over. The victim stated that he came over at 3:00 a.m. Counsel then asked, "[d]id he stay?" N.T., Trial, 10/17/13, at 38. The

_____

[2] In the words of the defense during its opening statement, "it was simply the grandfather asking and receiving." N.T., Trial, 10/17/13, at 16.

- 2 -

victim answered, "[h]e did not stay the night. He was there for an hour and he left." *Id*. Counsel inquired, "[w]hat was he doing for that hour." *Id*. The Commonwealth immediately lodged an objection. But the victim answered, "[w]e were having sex." *Id*. The trial court called the lawyers to sidebar and informed them that they would further discuss the matter in chambers.

The trial court asked Steele's counsel how he could ask that question in light of the pre-trial ruling regarding the inadmissibility of the victim's sexual conduct per the Rape Shield Law. The Commonwealth moved for a mistrial. Counsel for Steele contended that the matter could be ameliorated by an instruction to the jury to disregard the victim's answer and that a mistrial is barred by double jeopardy. The trial court again asked Steele's counsel how he could ask that question when he knew that the boyfriend was there because the couple had sex. Counsel responded that he "asked what *he* was doing. I didn't ask what *they* were doing…." *Id*., at 39 (emphasis added).

The Commonwealth argued that Steele's counsel knew exactly what he was doing when he asked the question—that it was an attempted end-run around the pre-trial ruling. The trial court agreed. The trial court stated that the victim had no other answer for that question other than they were having sex at that time—after all, that was the sole reason for his visit. Counsel for Steele again said that the trial court could simply instruct the

jury to disregard the victim's answer. The trial court, in no uncertain terms, informed counsel that it believed that he intentionally sought to elicit the victim's answer that she was having sex with her boyfriend. The trial court declared a mistrial.

The trial court then explained to the jury its reasoning. The trial court explained the Rape Shield Law and that it

> fear[ed] [defense counsel's] question of what did he do when he came in at 3:00 in the morning just crossed that line and that you're going to conclude well, when [the Commonwealth] objects that it had to be because of the fact that they were having sex. I'm not going to confirm or deny that, but the fact of the matter is that the seed has been planted and it violates the Rape Shield Law and I'm sorry that we have wasted your time on this. I don't know any way around it because I think it is a logical conclusion and that you folks were going to jump to it and that may in some way start to influence your decision.

*Id*., at 44-45. After the jury left, Steele's counsel asked to put on the record that he had not heard the victim's answer to his question and asked the trial court if they heard her answer. The trial court indicated that it heard the answer and thought the jury did as well, "but wasn't sure that they heard it that's why I couched it the way I did." *Id*. The record plainly indicates the victim answered the question after the objection.

Steele moved to dismiss the charges on double jeopardy grounds, which the trial court denied. This timely appeal followed.

Steele advances two arguments on appeal as to why the trial court erred in denying his motion to dismiss the charges on double jeopardy

grounds. First, he contends that the trial court abused its discretion in its evidentiary ruling regarding the evidence of the victim's sexual conduct. And, second, if we find the trial court committed no error in precluding that evidence, that the trial court abused its discretion in declaring a mistrial as there was no manifest necessity.

"A trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant will be reversed only where there has been a clear abuse of discretion." *Commonwealth v. Burns*, 988 A.2d 684, 689 (Pa. Super. 2009) (citations omitted).

The Rape Shield Law is codified at 18 Pa.C.S.A. § 3104 and provides, in pertinent part, as follows:

> **(a)  General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S.A. § 3104(a). "The purpose of the Rape Shield Law is to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim. The Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." *Burns*, 988 A.2d at 689 (citations omitted). *See also* 4 Summ. Pa. Jur. 2d Criminal Law § 15:22 (2d ed.).

Here, Steele wanted to introduce into evidence two instances of the victim's sexual conduct. On appeal, he mentions the two instances, but his argument is focused exclusively on the sexual conduct that resulted in the mistrial. That is the only episode we will address in this memorandum. That episode occurred with the victim's former boyfriend approximately four hours prior to the assault. Steele wanted to introduce into evidence that while she had consensual sex at that time with the former boyfriend[3] she neglected to inform the police that he snuck into her bedroom. He argues that that evidence is "certainly relevant to the issue of whether the sex engaged in with her grandfather was consensual." Specifically, that it goes to her credibility and bias against her grandfather. Appellant's Brief, at 8.

The exception specifically enumerated in the Rape Shield law, **see** 18 Pa.C.S.A. § 3104(a), is not applicable as there was no allegation by the victim of past sexual conduct with Steele. However, there are other exceptions recognized in case law. For instance, "[t]he Rape Shield Law may not be used to exclude relevant evidence showing a witness' bias or attacking credibility. Also, evidence tending to directly exculpate the accused by showing that the alleged victim is biased and thus has a motive to lie, fabricate, or seek retribution is admissible at trial." **Commonwealth**

---

[3] This information is contained in the State Police report. **See** Motion for In-Camera Hearing Pursuant to 18 Pa.C.S.A. §3104(b), Exhibit "A."

***v. Allburn***, 721 A.2d 363, 367 (Pa. Super. 1998) (citations and internal quotation marks omitted).

We fail to see how the fact that the victim had a sexual encounter with a former boyfriend hours prior to the alleged assault—by her grandfather—has any bearing on the victim's credibility or bias. The record does not disclose any adverse repercussions from that consensual encounter that would give her any reason to dissemble about the allegations of the assault by her grandfather. Permitting evidence of the consensual encounter is simply irrelevant. It would impermissibly shift the focus of the trial from the culpability of the accused toward the virtue and chastity of the victim in direct contravention of the Rape Shield Law. The sole aim of such evidence is to portray the victim in a negative light. The trial court committed no error in excluding that evidence.

Finding that the trial court did not abuse its discretion in precluding the evidence, we next consider whether it erred in granting the mistrial based on a finding of manifest necessity. It did not.

A trial court has the authority to declare a mistrial upon the showing of manifest necessity. ***See Commonwealth v. Kelly***, 797 A.2d 925, 936 (Pa. Super. 2002); Pa.R.Crim.P. 605(B). We will reverse only when the trial court abuses its discretion. ***See Kelly***, 797 A.2d at 936. The following principles guide our consideration:

> Where there exists manifest necessity for a trial judge to declare a mistrial *sua sponte,* neither the Fifth Amendment to

the United States Constitution, nor Article I, § 10 of the Pennsylvania Constitution will bar retrial.

In **Commonwealth v. Diehl**, 532 Pa. 214, [216–17], 615 A.2d 690[, 691 (1992) ], our Supreme Court, when considering whether manifest necessity for the trial court's *sua sponte* declaration of a mistrial existed, stated:

> Since Justice Story's 1824 opinion in **United States v. Perez**, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, it has been well settled that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on [whether] there is a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated. It is important to note that in determining whether the circumstances surrounding the declaration of a mistrial constitute manifest necessity, we apply the standards established by both Pennsylvania and federal decisions.
>
> Pennsylvania Rule of Criminal Procedure [605(B)] provides that:
>
> When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.
>
> In accordance with the scope of our review, we must take into consideration all the circumstances when passing upon the propriety of a declaration of mistrial by the trial court. The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. Additionally, failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury. Finally, it is well

established that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant.

We do not apply a mechanical formula in determining whether a trial court had a manifest need to declare a mistrial. Rather, varying and often unique situations arise during the course of a criminal trial ... [and] the broad discretion reserved to the trial judge in such circumstances has been consistently reiterated....

\* \* \*

... [T]here can be no rigid rule for finding manifest necessity since each case is individual. Moreover, as a general rule, the trial court is in the best position to gauge potential bias and deference is due the trial court when the grounds for the mistrial relate to jury prejudice. From his or her vantage point, the trial judge is the best arbiter of prejudice, because he or she has had the opportunity to observe the jurors, the witnesses, and the attorneys and evaluate the scope of the prejudice.

*Commonwealth v. Orie*, 88 A.3d 983, 995-997 (Pa. Super. 2014) (some internal citations and quotation marks omitted).

In his brief, Steele expresses surprise that the victim answered that the couple had sex. He explains that it was "unresponsive to defense counsel's question" and that "[w]hy she blurted it out remains a mystery." Appellant's Brief, at 13. This interpretation of events strains credulity. The trial court found that Steele's counsel *intentionally* sought to subvert the Rape Shield Law ruling by asking the victim what her former boyfriend was doing at her home at 3:00 am. *See*, *e.g.*, N.T., Trial 10/17/13, at 46 ("Come on, [defense counsel], you know that that question – he's over at 3:00 in the morning and you know that – what [is] she going to say? She's

going to say – what is the most predominant thing that he did?  Well, he had sex with me.  You know, he didn't turn on the TV.  He didn't turn on the light.  I mean she's not going to talk about that."); Trial Court Opinion, 1/13/14, at 3 ("[T]he question posed by defense counsel was intentionally designed to elicit testimony which had, by pre-trial order, been prohibited.").  This is a credibility determination that has eminent support in the record.

Once the jury heard the answer—that the couple had sex—the damage was done.  Steele maintains, however, that the trial court could simply have given a cautionary instruction.  He claims that the trial court did not consider the instruction or, if it did, that it was "short lived, if non-existent." Appellant's Brief, at 12.  The record belies this assertion.  Defense counsel *repeatedly* asked that the trial court provide a cautionary instruction.  **See** N.T., Trial, 10/17/13, at 38-39, 40-41, 43.  The trial court plainly indicated that it considered, and then rejected, giving such an instruction.  **See id**., at 40-41.  As it explains in its opinion, "the court believed any verdict would not be based solely on relevant evidence."  Trial Court Opinion, 1/13/14, at 3.  The trial court did not believe a curative instruction would have effectively cured "the inflammatory nature of the evidence."  **Id**., at 3-4 (footnote omitted).

The trial court's reasoning is sound.  We can find no abuse of discretion with the trial court's finding that declaring a mistrial was of manifest necessity.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/24/2015