J-S18020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN MICHAEL BOOK, | : | |
| | : | |
| Appellant | : | No. 1126 WDA 2017 |

Appeal from the Order July 20, 2017
in the Court of Common Pleas of Butler County,
Criminal Division at No(s): CP-10-CR-0000630-2016,
CP-10-CR-0001483-2015

BEFORE: STABILE, J., MUSMANNO, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MUSMANNO, J.: **FILED JUNE 27, 2018**

Shawn Michael Book ("Book") appeals from the Order denying his Motion to bar a retrial, following the declaration of a mistrial in Book's second jury trial.[1] We affirm.

In its Opinion, the trial court described the history underlying the instant appeal, which we adopt as though fully restated herein. **See** Trial Court Opinion, 7/20/17, at 1-15.

---

[1] This is an interlocutory appeal as of right. **See Commonwealth v. Hallman**, 67 A.3d 1256, 1260 (Pa. Super. 2013) (recognizing that "a defendant can immediately appeal as of right an order that denies a non-frivolous motion to dismiss on state or federal double jeopardy grounds.").

Book's first jury trial, on the charges of burglary[2] and related crimes, ended in a mistrial.[3] During his second jury trial, three incidents took place, culminating in the trial court's declaration of a mistrial, *sua sponte*. First, Commonwealth witness Toni Arnold ("Arnold") improperly referred to Book's prior incarceration, after which the trial court denied Book's Motion for a mistrial. **See** N.T., 4/17/17, at 226-27. Second, Book's wife, Michelle Book ("Michelle"), another Commonwealth witness, testified regarding privileged communications between her and Book. **See** N.T., 4/18/17, at 56-58. Counsel for Book objected to the testimony. **Id.** at 57-58. The trial court did not rule on the objection, but no further testimony regarding the discussion took place.[4] Third, it was discovered that discovery materials, including a possible recording related to interviews conducted by Master Trooper Dominic Caimona ("Master Trooper Caimona") and Corporal Randolph Guy, were not provided to defense counsel. **See** N.T., 4/18/17, at 189-91 (wherein Michelle testified regarding interviews conducted by the officers, and a subsequent

---

[2] **See** 18 Pa.C.S.A. § 3502.

[3] During the first trial, a police officer improperly had testified regarding facts from which it could be inferred that Book had a criminal record.

[4] The trial court requested that the prosecutor provide additional foundation to establish that the conversation was not privileged, *i.e.*, that a third person was present during the conversation. **Id.** at 58. The prosecutor was unable to provide the necessary foundation. **Id.** at 58-59.

sidebar discussion regarding the possibility of a **Brady**[5] violation). This came to light during the testimony of Master Trooper Caimona, who had been called as a witness by Book. Following the third event, the trial court, *sua sponte*, declared a mistrial, providing the following rationale for its decision:

> [N]umber one, we have the inadvertent[,] but certainly prejudicial[,] blurt out by [] Arnold concerning the fact that [Book] was in prison. Then we have Michelle['s] [] testimony in violation of the spousal privilege[,] and then we have this issue[,] which[,] I think[,] is cumulatively going to make me declare a mistrial at this point.

*Id.* at 226-27.

Book subsequently filed the instant Motion to Dismiss With Prejudice seeking to bar a third trial. In support, Book claimed that prosecutorial misconduct caused the prior mistrials, and consequently, a retrial would violate his constitutional protection against double jeopardy. Motion to Dismiss With Prejudice, 6/6/17, at 1; Brief in Support of Motion, 6/6/17, at 3 (unnumbered). In an Opinion and Order entered on July 20, 2017, the trial court denied Book's Motion to Dismiss With Prejudice. Thereafter, Book filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Book presents the following claims for our review:

---

[5] **See Brady v. Maryland**, 373 U.S. 83, 87 (1963) (holding that the prosecution must disclose evidence favorable to the accused that is material either to guilt or to punishment).

**A.** Whether the [trial] [c]ourt committed an error of law and/or abuse of discretion in denying [Book's] "Motion to Dismiss With Prejudice"?

**B.** Whether the [p]rosecutor and/or other agents of the Commonwealth engaged in prosecutorial misconduct/overreach in the instant case[,] aimed at either forcing [Book] to request a mistrial and/or deny [Book] a fair trial?

**C.** Whether the conduct of the agents of the Commonwealth, namely members of the [Pennsylvania] State Police, should be imputed to the Commonwealth as misconduct barring retrial of [Book]?

**D.** Whether the overreach/prosecutorial misconduct by the Commonwealth/its agents prohibits retrial of [Book] via Pa. Const., art. I, § 10 and U.S. Const., amend. V.[?]

Brief for Appellant at 9 (emphasis omitted, issues renumbered for clarity).

In the Argument section of his brief, Book reduces his claims to the following three issues: (1) whether prosecutorial misconduct, as defined under *Commonwealth v. Smith*, 615 A.2d 321 (Pa. 1980), occurred in the instant case, thereby creating a double jeopardy prohibition of retrial, *see* Brief for Appellant at 19; (2) whether the weight of the evidence in this case indicates that the Commonwealth actors engaged in the prosecutorial overreach proscribed under the *Smith* test and, therefore, the double jeopardy prohibition of retrial is triggered, *see id.* at 39; and (3) whether the trial court should impute prosecutorial misconduct on the part of Pennsylvania State Police personnel to the prosecutor for purposes of double jeopardy analysis, *see id.* at 61.

- 4 -

In assessing a double jeopardy claim,[6] we are guided by the following:

The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution[,] and Article 1, § 10 of the Pennsylvania Constitution[,] protect a defendant from repeated criminal prosecutions for the same offense. Ordinarily, the law permits retrial when the defendant successfully moves for mistrial. If, however, the prosecution engages in certain forms of intentional misconduct, the Double Jeopardy Clause bars retrial. Article I, § 10, which our Supreme Court has construed more broadly than its federal counterpart, bars retrial not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial. An error by a prosecutor does not deprive the defendant of a fair trial. However, where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied.

***Commonwealth v. Graham***, 109 A.3d 733, 736 (Pa. Super. 2015) (quotation marks, brackets, and citations omitted).

Thus, whether a dismissal is warranted turns on whether the Commonwealth intended to deprive the defendant of a fair trial. ***Commonwealth v. Adams***, 177 A.3d 359, 372 (Pa. Super. 2017).

By and large, most forms of undue prejudice caused by inadvertent prosecutorial error or misconduct can be remedied in individual cases by retrial. Intentional prosecutorial misconduct, on the other hand, raises systematic concerns beyond a specific individual's right to a fair trial that are left unaddressed by retrial. As this Court has often repeated, a fair trial is not simply a lofty goal, it is a constitutional mandate, … and where that

_____

[6] Book does not challenge the trial court's *sua sponte* declaration of a mistrial. Rather, Book challenges the denial of his Motion to Dismiss With Prejudice, based upon a claim of prosecutorial misconduct. "Double jeopardy, as it relates to prosecutorial misconduct, will attach where the prosecutorial misconduct is calculated to trigger a mistrial." ***Commonwealth v. Diehl***, 615 A.2d 690, 693 (Pa. 1992).

constitutional mandate is ignored by the Commonwealth, we cannot simply turn a blind eye and give the Commonwealth another opportunity.

*Id.* (citations and internal quotation marks omitted). However,

the sanction of dismissal of criminal charges should be utilized only in the most blatant cases. Given the public policy goal of protecting the public from criminal conduct, a trial court should consider dismissal of charges where the actions of the Commonwealth are egregious and where demonstrable prejudice will be suffered by the defendant if the charges are not dismissed.

*Id.* (citations omitted).

In his first issue, Book argues that, where manifest necessity is the result of prosecutorial misconduct, the "***Smith*** test" should be applied, and retrial should be barred. Brief for Appellant at 19. Book asserts that the prosecutorial overreach in this case is similar to the misconduct that occurred in ***Smith***. *Id.* at 25. According to Book, the Commonwealth's case was not proceeding as planned, and a representative from the Pennsylvania State Police, seated at the prosecutor's table, was aware of this. *Id.* Book posits that this created a motive for the Pennsylvania State Police and/or the prosecutor to intentionally inject error into the case, to force Book to choose between opting for a mistrial or obtaining a verdict. *Id.* According to Book, the mistrial was declared during the testimony of Master Trooper Caimona, who had over two hours to prepare for his "eventually-fatal testimony[,] during which he was, by all accounts, in almost constant contact with the officers [and] well aware of the issues which had arisen during the rest of the trial." *Id.* at 26. Book asserts that the purpose of Master Trooper Caimona's

testimony was to create the type of error that would meet the "***Smith*** test." ***Id.***

In his second issue, Book argues that the "weight of the evidence" indicates that the "Commonwealth actors engaged in the prosecutorial 'overreach' proscribed by the ***Smith*** Rule," thereby triggering Book's double jeopardy protections. ***Id.*** at 39 (internal quotation marks and some capitalization omitted). In support, Book directs our attention to inconsistencies in the testimony of other witnesses, which, he claims, established the motive for the Commonwealth to inject error into the case. ***See id.*** at 26-45. Book contends that it would be "ludicrous" to presume that the prosecutor did not make known, to the police witnesses, the negative implications of the "egregiously-lacking investigation," and the "fatal nature" of exposing the shortfalls, inconsistencies, "and outright lies" to the jury. ***Id.*** at 39-40. Book contends that the Pennsylvania State Police witnesses and the prosecutor then acted upon their "perceived need" to inject error into the case. ***Id.*** Book asserts that fatal errors in both trials "have been the direct result of a concerted effort by [Pennsylvania State Police] personnel, and/or the [p]rosecutor, which mirror, in both form and function, the alternative prongs of the '***Smith*** test' …." ***Id.*** at 46.

In its Opinion, the trial court set forth the appropriate law, addressed Book's first two challenges to the denial of his Motion to Dismiss With Prejudice, and concluded that they lack merit. ***See*** Trial Court Opinion,

7/20/17, at 16-18. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis as to Book's claims, with the following addendum.

As our Supreme Court announced in **Smith**, "the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." **Smith**, 615 A.2d at 325.

> An example of egregious prosecutorial misconduct which has been deemed sufficient to warrant dismissal may be found in **Smith**. In **Smith**, the Commonwealth deliberately withheld from a capital defendant: (1) the existence of an agreement with its chief witness pursuant to which he received lenient treatment at sentencing on unrelated charges in exchange for his testimony, and (2) material, exculpatory physical evidence that it had discovered mid-trial. The physical evidence consisted of grains of sand that were found between the toes of the murder victim at her autopsy. The sand was consistent with Smith's defense that the crime had been committed in Cape May, New Jersey, by others, and not by him in Pennsylvania, as the Commonwealth had alleged. At trial, when a Pennsylvania state trooper testified on cross-examination that granular particles which looked like sand had been removed from the victim's body, the Commonwealth implied that [the trooper] had fabricated his testimony and the trial prosecutor recommended to his superior that he investigate the feasibility of prosecuting the state trooper for perjury. While the trial was still in progress, the state police discovered the adhesive "lifters" that had been used to remove and retain the sand from the victim's feet. The Commonwealth, however, failed to disclose this evidence and, indeed, continued to suppress the evidence for over two years while the case was on direct appeal to this Court. In light of this deliberate, bad faith failure to disclose potentially exculpatory evidence, this Court discharged Smith under the double jeopardy clause of the

Pennsylvania Constitution, opining that "it would be hard to imagine more egregious prosecutorial tactics." [**Smith**,] … 615 A.2d at 323.

On the other hand, a mere finding of willful prosecutorial misconduct will not necessarily warrant dismissal of charges. For example, in **Commonwealth v. Moose**, … 602 A.2d 1265 ([Pa.] 1992), [the Pennsylvania Supreme] Court found that the prosecutor's failure to inform defense counsel of a witness's police statement[,] which contained incriminating admissions allegedly made by the defendant[,] amounted to a "willful violation of Rule 305." **Id.** at … 1274. The [Supreme] Court held that "the district attorney's conduct raised significant ethical concerns" and referred the matter to the Disciplinary Board for its consideration. **Id.** … at 1274 n.8 & 1276 n.12. Nonetheless, the [Supreme] Court did not dismiss the charges against Moose, but rather remanded the matter for a new trial. **Id.** … at 1276.

**Commonwealth v. Burke**, 781 A.2d 1136, 1144-45 (Pa. 2001).

In the instant case, the prosecutor's conduct does not approach that of the deliberate, bad faith, prosecutorial misconduct that warranted the dismissal in **Smith**. Further, the prosecutor's conduct does not even approach the conduct of the prosecutor in **Moose**. There is no evidence here of deliberate overreaching by the Commonwealth or its witnesses. Although Book offers speculation regarding the motives of the Commonwealth's witnesses, there is no evidence supporting his assertions. Simply put, the errors in this case in no way approach the egregious and intentional nature of the conduct addressed in **Smith**. Accordingly, we cannot grant Book relief on his first two issues.

In his third issue, Book claims that the conduct and motives of the Pennsylvania State Police witnesses should be imputed to the prosecutor, for

the purpose of applying the **Smith** test. Brief for Appellant at 61. Book contends that the prosecutor should "feel adverse effects from the intentional acts of her fellow Commonwealth Agents in the prosecution of [Book] in now[] two (2) trials." **Id.** at 65.

In **Adams**, this Court recognized the important role that police have in disclosing potentially exculpatory material. **Adams**, 177 A.3d at 373. However, our Court concluded that "there may be no double-jeopardy dismissal if [police] misconduct is unintentional[,] or if it does not lead to intentional misconduct of the prosecutor." **Id.**

Here, the trial court found no evidence that the Pennsylvania State Police witnesses intentionally acted to provoke a mistrial. Trial Court Opinion, 7/20/17, at 17. Further, the trial court found no evidence that would support a finding that Master Trooper Caimona purposefully injected error into the proceedings, based upon an awareness that the Commonwealth's case was not proceeding "as planned." **Id.** Finally, as observed by the trial court, Master Trooper Caimona was called upon to testify *by Book*, and not the prosecutor. **Id.**

Because the trial court found that there was no intentional misconduct or intent to deprive Book of a fair trial, and because those findings are supported by the record, we affirm the trial court's conclusion that Book is not entitled to have the charges against him dismissed on double jeopardy

grounds. We therefore affirm the Order of the trial court, which denied Book's Motion to Dismiss With Prejudice.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/27/2018