J-A24031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RICHARD HARROLD MIDDLETON JR. :
:
Appellant : No. 1716 MDA 2024

Appeal from the Order Entered November 14, 2024
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0002307-2023

BEFORE: DUBOW, J., KUNSELMAN, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: OCTOBER 29, 2025**

Richard Harrold Middleton, Jr. appeals from the order denying his motion to dismiss a pending charge on the basis of double jeopardy. After a jury was sworn in for his trial on driving under the influence (DUI), the trial judge gave an ultimatum: Middleton could proceed to trial without calling a witness whom a motions judge had ruled could not testify, or there would be a mistrial. Middleton suggested that alternatively, the trial court could follow the order but interpret it to allow the witness to testify. Four weeks later, when Middleton argued his dismissal motion, he submitted that the trial judge could have overruled the motions judge's order. Because the trial judge fully considered the alternatives that appeared when the issue arose the morning of trial, we conclude that manifest necessity existed for the trial judge to declare a mistrial, and we affirm the order denying Middleton's motion to dismiss.

On July 14, 2023, Police charged Middleton with DUI and other crimes, alleging that they observed Middleton slumped over the driver's seat of a vehicle stopped on the side of the highway on January 29, 2023; Middleton's blood contained alcohol, THC, and fentanyl. All charges were held for court. After several continuances, the case was scheduled for a pre-trial conference on September 25, 2024, before Judge Christylee Peck. Defense counsel indicated at this conference that the defense was ready for trial.

On October 8, 2024, Middleton filed a notice of alibi defense. He provided that a witness, "Adaya," would "testify she was the operator of the vehicle" to establish that Middleton "was not the driver of the vehicle at the time and place" of the alleged offense.

Three days later, at call of the list on October 11, 2024, the prosecutor asked Judge Peck to preclude the alibi witness from testifying based on Middleton's untimely notice. Middleton explained that the alibi witness was his niece. Defense counsel explained her efforts to contact the witness and inform the Commonwealth.

Judge Peck ordered on the record that Middleton would not be able to present his alibi defense at trial:

> [Middleton] having appeared together with defense counsel, . . . and the Commonwealth having requested to exclude [Middleton's] Notice of Alibi Defense in that the alibi notification was provided to the Commonwealth on October 3, 2024, and the Commonwealth indicating that [Middleton] was arraigned on November 6, 2023, and the Court noting that [Middleton's] notification for alibi was filed way past any deadline, and the Court noting that the matter is scheduled to go to trial on Monday, October 14, 2024, it is hereby ordered that the Court finds that it

- 2 -

is in the interest of justice to deny the request to present an alibi defense in this case as the notice was given too late.

N.T., 10/11/24, at 5.

The parties conferred whether the case could be continued. The Commonwealth indicated that it had a witness who would be unavailable until Wednesday, October 16, 2024. Trial was thus scheduled to begin on Wednesday, with jury selection on Monday, October 14, 2024.

Later in the day, Judge Peck entered a typed order clarifying the ruling on Middleton's alibi defense. Notably, the typed order prohibited Middleton from presenting evidence of his alibi defense through his niece but allowed him to testify about his alibi himself. In relevant part:

> [T]he Court finds that it is in the interest of justice to deny the request to present an alibi witness as proposed by [Middleton] as the notice was given untimely. [Middleton] shall not present any evidence of his purported alibi witness, his niece. [Middleton] is permitted to present such alibi defense through testimony by the Defendant, if he so chooses to testify. **See** Pa.R.Crim.P. 567(B)(1). The Court cautions counsel for the Commonwealth to comply with Rule 567(F), regarding not arguing any adverse inference, nor making any comment concerning [Middleton's] failure to call available alibi witnesses that have been excluded by this Order, unless [Middleton] or [Middleton's] attorney shall attempt to explain such failure to the jury.

Order, 10/11/24, 4:05 p.m., at 1.

A jury was selected and sworn on Monday, October 14, 2024. As Judge Peck was helping hurricane victims in North Carolina later in the week,[1] the case was assigned to be tried before Judge Matthew Smith on Wednesday, October 16, 2024.

---

[1] It appears that the parties were unaware of Judge Peck's absence until later.

On the morning of trial, Middleton requested that Judge Smith revisit Judge Peck's order. After discussion in chambers, defense counsel stated on the record that the alibi notice was filed in error. Counsel explained that Middleton's niece would testify that the niece was driving and Middleton was a passenger in the car. Because the testimony would indicate Middleton was at the scene and not somewhere else, an alibi defense would not apply. Judge Smith indicated that he consulted with Judge Peck, who agreed that if Middleton was at the scene of the crime, then Judge Peck's order precluding an alibi witness was erroneous. However, Judge Smith reasoned that he would have to follow Judge Peck's evidentiary order at trial.

Following additional discussion in chambers, Judge Smith announced that he found manifest necessity for a mistrial. Both parties objected. Judge Smith again explained that Judge Peck's order precluded Middleton's witness. He provided two options: proceed to trial without the witness' testimony, or find a mistrial due to the effect of defense counsel's erroneous notice of alibi. After further argument, Middleton suggested that Judge Peck's order could be interpreted only to deny the alibi defense, rather than exclude the specific witness entirely.

Judge Smith declared a mistrial and directed Middleton to revisit Judge Peck's ruling with Judge Peck. The jury was excused.

On October 22, 2024, Middleton moved to dismiss on double jeopardy grounds. He submitted that there was an alternative to a mistrial: Judge Peck

could have clarified her order on the record (that while Middleton's niece could not provide alibi evidence, she could testify as a fact witness).

While that motion was pending, on November 7, 2024, Middleton appeared before Judge Peck and withdrew his notice of alibi. Judge Peck ordered that Middleton could present the testimony of his niece at trial.

Judge Smith heard Middleton's motion to dismiss on November 14, 2024. Middleton argued first, as he had in his motion, that Judge Peck could have clarified her order. Second, he argued that Judge Smith could have interpreted Judge Peck's order to allow fact testimony from his niece. Third, Middleton argued (for the first time in this case) that Judge Smith could have overruled Judge Peck's order as an exception to the coordinate jurisdiction rule. Middleton noted that the jury had not been tainted, and the Commonwealth could not be prejudiced because they were not entitled to notice of a non-alibi defense.

Judge Smith denied Middleton's motion to dismiss.[2] Middleton timely appealed. Middleton and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Middleton presents two related issues on appeal:

I.  Does double jeopardy attach in this case when the Court declared a mistrial when the circumstances surrounding the

_____

[2] Judge Smith did not render a specific finding whether Middleton's motion to dismiss was frivolous. **See** Pa.R.Crim.P. 587(b)(4). However, because he advised Middleton, "you can appeal that now. In fact, I think you have to," we accept that he did not deem the motion to be frivolous. **See** Pa.R.Crim.P. 587(b)(6).

trial did not support the need for a mistrial and the Court failed to consider less drastic alternatives prior to declaring a mistrial due to manifest necessity?

II.    Did the Trial Judge err in denying [Middleton's] motion to dismiss?

Middleton's Brief at 9 (suggested answers omitted). We address Middleton's issues together.

We review the denial of a motion to dismiss on double jeopardy grounds mindful that a trial judge has discretion to declare a mistrial *sua sponte* based on manifest necessity. **Commonwealth v. Walker**, 954 A.2d 1249, 1254 (Pa. Super. 2008) (*en banc*) (citing **Commonwealth v. Kelly**, 797 A.2d 925, 936 (Pa. Super. 2002)). "An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather where the trial court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." **Commonwealth v. Talley**, 265 A.3d 475, 530 (Pa. 2021). Thus, "an appellate court should not find that a trial court abused its discretion merely because the appellate court disagrees with the trial court's conclusion." **Id.**

The federal and state constitutions allow a defendant to be retried after a *sua sponte* mistrial only if "there [was] a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated." **Walker**, 954 A.2d at 1254 (ultimately citing **Commonwealth v. Bartolomucci**, 362 A.2d 234 (Pa. 1976), and **United States v. Dinitz**, 424 U.S. 600 (1976)). To determine if manifest necessity existed, we consider all the circumstances

- 6 -

surrounding the mistrial. *Id.* Importantly, a trial court's "failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial." *Id.* (ultimately citing *Commonwealth v. Diehl*, 615 A.2d 690, 691 (Pa. 1992)). Any doubt as to manifest necessity should be resolved in the defendant's favor. *Id.* at 1255. However, there is no mechanical formula to review the "varying and often unique situations" that arise during trial, in light of the trial judge's broad discretion. *Id.*

Central to the issue in this case is the coordinate jurisdiction rule, which generally provides "that judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). Unless an exception applies, a judge "commits a *per se* abuse of discretion" by overruling or vacating an order from another judge of the same court. *Id.* at 1332 (citing *Commonwealth v. Brown*, 402 A.2d 1007, 1008 (Pa. 1979)). The "exceptional circumstances" that allow such a ruling include "an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id.* (citations omitted). The procedural posture of a case is not relevant to determining if one of these exceptions applies. *Ivy Hill Congregation of Jehovah's Witnesses v. Dep't of Human Servs.*, 310 A.3d 742, 758 (Pa. 2024). The application of the coordinate jurisdiction rule is a question of law. *Id.* at 754.

Here, on the morning of Middleton's scheduled trial, defense counsel asked Judge Smith to reconsider Judge Peck's order. The parties and Judge Smith recognized that the order limited Middleton's ability to present testimony from his niece, and they understood the coordinate jurisdiction rule to prevent Judge Smith from overruling an order from another judge on the same court. Judge Smith initially considered two alternatives: either a trial without testimony from Middleton's niece, or a mistrial to allow Middleton to address the issue with Judge Peck. Middleton suggested another option that day: interpret Judge Peck's order to allow his niece's expected testimony (that she was driving and he was a passenger) and prohibit only testimony about an alibi that Middleton did not intend to present (that Middleton was not at the scene). After several sessions in chambers and in open court, Judge Smith declared a mistrial and excused the jury.

Judge Smith did not abuse his discretion by finding manifest necessity for a mistrial. Based on the thorough presentation by the parties, as well as conversation with Judge Peck, Judge Smith considered and had a reasonable basis to reject the alternative options presented. Judge Peck's typed order ruled that Middleton "shall not present any evidence of his purported alibi witness, his niece." If Judge Smith had allowed Middleton's niece to testify, as long as she did not claim Middleton was not at the scene, this would have effectively overruled Judge Peck's order and violated the coordinate jurisdiction rule. If the case had proceeded to trial, Judge Smith reasoned that defense counsel's misstep would deprive Middleton of a key witness.

Based on the options presented at the time of the scheduled trial, Judge Smith's declaration of a mistrial was within his discretion.

Middleton's subsequent options came too late to alter Judge Smith's discretionary ruling. First, in his motion, he suggested that Judge Peck could have clarified her own order on the record. However, Judge Peck was not in the courthouse on the day that she had directed the case would be tried. Second, Middleton contended that Judge Smith could have overruled Judge Peck's order, as an exception to the coordinate jurisdiction rule. Notably, the facts of this case fit well within one of the exceptions to the coordinate jurisdiction rule, *i.e.*, that it was clearly erroneous and would create a manifest injustice if followed. By the day of trial, the parties and Judge Smith had a fuller understanding of the facts and the applicable law than was presented to Judge Peck. As it stood, Judge Peck's order would have deprived Middleton of his ability to present his intended defense. Judge Smith even consulted with Judge Peck, who agreed that the order was erroneous. However, during the multiple sessions in court on the day of trial, Middleton did not argue that this or any other exception to the coordinate jurisdiction rule would apply. Given what Judge Smith knew on the day of trial, we discern no abuse of discretion in Judge Smith's failure to *sua sponte* invoke an exception to the coordinate jurisdiction rule. Instead, Judge Smith properly considered the lesser alternatives to a mistrial that appeared when Middleton presented the unintended effect of Judge Peck's order—that Middleton would be deprived of

a defense at trial. Thus, his *sua sponte* grant of a mistrial was within the bounds of his discretion.

Additionally, because Judge Smith's finding of manifest necessity for a mistrial was not an abuse of discretion, neither was the denial of Middleton's motion to dismiss on double jeopardy grounds.

Order affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/29/2025